THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MERRIL MAY, Appellant.

Argued February 25, 1943; decided April 22, 1943.

*Melvin F. Kinkley* for appellant.

*Carl J. Hynes, District Attorney,* for respondent.

Lewis, J.  The appellant, Merril May, was indicted for murder in the second degree.  The indictment charged that on July 21, 1939, in the town of Henderson, Jefferson county, he shot and fatally wounded with a shotgun one Joseph Sidor, without premeditation and deliberation but with a design to effect death. He stands convicted on circumstantial evidence.

Upon the trial the proof of *corpus delicti* developed the following facts:  On the night of July 30, 1939, two fishermen on Henderson Pond discovered floating face downward the body of a young man.  No water was found in the lungs of the decedent although there is undisputed evidence by medical experts that the body had been immersed for a period of one or two weeks.  The autopsy revealed a large, irregular cavity in the right side of the head from which had been removed a jagged-edged section of the skull which measured five inches in length and two inches wide.  There were also found lodged in loose flesh which surrounded the head wound a number of "shot gun pellets."  It is not disputed that the cause of death was the gun-shot wound.

The defense maintained throughout the trial that the identity of the decedent had not been established.  For our present purposes however we may omit discussion of the vast amount of evidence presented by the prosecution upon that branch of the case, believing, as we do, that there was evidence sufficient in law to support a finding by the jury that the dead body was

that of Joseph Sidor — a young man who had escaped from a state school for mental defectives and who for several months during the spring and early summer of 1939 had lived with the defendant in a shack on the Hall farm near Henderson Pond.

A closer question in the case is whether the circumstantial evidence presented by the prosecution was sufficient in law to warrant a finding by the jury that it was the defendant who shot and fatally wounded Joseph Sidor and that such act was committed without premeditation and deliberation but with a design to effect death (Penal Law, § 1046). If, as the jury has found, there is circumstantial evidence sufficient to support the defendant's conviction, the record must leave us with no uncertainty as to those facts from which inferences were drawn which controlled the jury's verdict. Stated otherwise, the facts from which the controlling inferences were drawn must themselves have been proved, not presumed. (*People* v. *Razezicz*, 206 N. Y. 249, 272; *People* v. *Harris*, 136 N. Y. 423, 429.)

It was the theory of the prosecution that the defendant shot Joseph Sidor with a shot gun on the evening of July 21, 1939, while they were together in a rowboat on Henderson Pond. No witness was called who saw Sidor meet his death; nor was there direct evidence of the time and place of its occurrence. Although the farm of the People's witnesses Fitzgerald borders upon the small pond in which the body was found, there is no evidence that a shot was heard at any time by members of the Fitzgerald family or by any other persons. There is evidence that during the afternoon of July 21st, the date when it is charged the murder was committed and nine days before the body was found, Joseph Sidor was seen working near the shack on the Hall farm where he and the defendant were then living. There is also evidence that on that day the defendant arranged with Mrs. Fitzgerald to rent a rowboat. The arrangement called for the use of a boat which was moored at the Fitzgerald landing and was owned by an " Italian " who lived in Syracuse. When that rowboat was used by its owner a week later he found evidence of blood on the bottom boards and on the gunwales. The blood on the gunwales was later analyzed and found to be human blood. But Mrs. Fitzgerald, when called by the prosecution, did not recall having seen either the defendant or Sidor in that rowboat on July 21st. She did testify

that about 4:30 o'clock in the afternoon of that day she saw the defendant with a Mrs. Stone in the latter's automobile but she did not see Joseph Sidor. The People also called Mrs. Fitzgerald's husband who did not recall having seen either the defendant or Joseph Sidor on July 21st. Indeed there is no testimony by any witness that at any time on July 21st, the date when it is charged the murder occurred, the defendant was seen in a rowboat on Henderson Pond with Joseph Sidor. The only evidence which relates itself to this vital point in the case is that of a sergeant of the State Police who testified that while he was questioning the defendant on September 1, 1939, the defendant stated in substance that on July 21st, in company with Mrs. Stone and one Cecil Burns, he had used a boat " owned by an Italian man * * * from Syracuse." It should be said that " Cecil Burns " is the name of a young man who is claimed by the defense to have lived with the defendant at the shack on the Hall farm during the spring and early summer of 1939. In view of the testimony by members of the Hall family, who frequently saw a young man known to them as Joseph Sidor with the defendant at the shack, the People took the position throughout the trial that there never was a young man named " Cecil Burns " who lived with the defendant and that such a claim by the defense was so improbable that its falsity was manifest. The People also stress a statement made by the defendant while he was being questioned by members of the State Police. He was asked whether it was not true that in a fit of anger he had shot the boy known as " Sidor." To that inquiry it is said the defendant answered — " I won't say no more, but I want to think about it a couple of days and then I will come back and talk with you." A month later, without being questioned further by the State Police, the defendant was placed under arrest.

Of course, the two statements by the defendant, quoted above, made to members of the State Police are by no means conclusive. Indeed, in considering their probative value and any inference fairly to be drawn from them we have in mind the word of caution often found in judicial writing and phrased as follows by Mr. Justice CROUCH, later a member of this court: " The weight and persuasive value of this inference varies in accordance with the amount and weight of the other evidence

in the case tending to show guilt, for it operates ordinarily only by way of lending strength to other and more tangible evidence." (*People* v. *Nowakowski,* 221 App. Div. 521, 523; and see *Commonwealth* v. *Webster,* 5 Cush. 595, 317 [SHAW, Ch. J.].) The problem in the present case has been to find " other and more tangible evidence."

In addition to evidence already mentioned, it appears that during the period of nine days between the date when the People charge that the murder was committed and the date when the victim's body was discovered, the defendant was at the shack on the Hall farm. During that period he met and talked with members of the Hall family and on July 25th went fishing on Henderson Pond. The prosecution places emphasis upon the testimony given by Mr. Hall and his son that when on August 1st they happened to mention to the defendant the fact that the body of a dead man had been found in the Pond, the defendant made some casual comment upon the fact but that as he did so his face bore a " startled look." The People contend that the defendant's reaction, when word came to him of the gruesome discovery, was evidence of his consciousness of guilt.

Without analyzing further the record, which has been the subject of a searching examination by us, it is enough to say that we regard the evidence as a whole of doubtful legal sufficiency to warrant a finding of the defendant's guilt. Being unable by direct evidence to prove that the defendant shot and killed Joseph Sidor on July 21, 1939, and having failed to bring forward direct proof that they were seen together on that date at the small pond where the murder is claimed to have been committed, the prosecution resorted to circumstantial evidence to establish the defendant's guilt. However, we do not find in the circumstantial evidence upon which the People rely that quality of certitude which the law requires as to those facts, bearing upon the defendant's conduct on the date when it is claimed the murder was committed, from which the jury was permitted to draw controlling inferences and led to the finding of the defendant's guilt. (*People* v. *Giordano,* 213 N. Y. 575, 580; *People* v. *Harris, supra,* p. 429.) And as to proof of a design by the defendant to effect the death of Joseph Sidor — a prerequisite to a conviction of murder in the second

degree (Penal Law, § 1046; *People* v. *Dinser,* 192 N. Y. 80, 85) — the evidence was so remote in point of time and so insubstantial as to cast doubt upon that essential branch of the proof.

In this state of the record the verdict of the jury may well have been influenced by the following evidence which we believe was erroneously admitted: On the night of August 2nd or during the early hours of the following day — two days after the discovery of the body in Henderson Pond, and one day after the defendant had been told of that discovery — the shack in which it is claimed the defendant and Joseph Sidor had been living was destroyed by fire. There was no evidence that anyone was present when the structure burned. In fact, the destruction of the building was not known, in so far as the record discloses, until the following day. Upon the trial, however, the People charged that it was the defendant who set the fire, the contention being that it was done in an effort by the defendant to make it appear that Joseph Sidor had burned the shack and was still alive. But there is no evidence which would serve as a legal basis for such a theory. There is no direct evidence that the defendant had anything whatever to do with the fire. The witness Case testified that on the night before the fire, as he passed the shack in the company of his wife, he saw the defendant standing outside near Mrs. Stone's automobile. Mrs. Case testified that she saw the automobile but did not see the defendant. It also appears that on the night before the fire the witness Hall, Sr., had been at the shack, but there is no evidence that he saw there anything which would have aroused suspicion. Notwithstanding the failure by the prosecution to prove who burned the shack, the District Attorney in his summation left with the jury the suggestion that the defendant set the fire in furtherance of a scheme by which he hoped to make it appear to those who might investigate the murder that Joseph Sidor was still alive and that it was he who burned the shack. In the absence of direct proof that the defendant set the fire, there was nothing more than an inference leading to that conclusion, which inference could have been drawn only from the evidence that the defendant had been seen at the shack the night before the fire. However the prosecution invoked not only that inference but a second inference based upon the first, *viz*: that the defendant intended to use the firing of the shack as a means

to divert any suspicion which might be abroad that it was he (the defendant) who committed the murder. The admission of evidence of the fire, which was promptly challenged by counsel for the defendant, and the use to which that evidence was put by the District Attorney in his summary, were clearly within the condemnation of the long established rule that — " where circumstantial evidence is relied upon, the facts upon which inferences must be drawn must themselves be satisfactorily established and must be of such a character as, if true, to exclude to a moral certainty every other hypothesis but that of the guilt of the accused  *  *  *." (*People* v. *Lewis,* 275 N. Y. 33, 39; *People* v. *Fitzgerald,* 156 N. Y. 253, 258; *Shepherd* v. *People,* 19 N. Y. 537, 545.)

We cannot say that the error was not prejudicial to the defendant's rights. When it is considered cumulatively with other circumstantial evidence to which reference has already been made, which we regard as of doubtful probative value, we conclude that in justice to the defendant's rights a new trial should be had.

Accordingly, the judgments should be reversed and a new trial ordered.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, CONWAY and DESMOND, JJ., concur.

Judgments reversed, etc.