THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
NELSON S. TROCHE, Appellant.

Third Department, November 16, 1961.

*M. Nelson Zapata (Joseph Harris* on the brief), *Ungerman, Greenberg & Harris* for appellant.

*John T. Garry, II, District Attorney (Condon A. Lyons* on the brief), for respondent.

HERLIHY, J. The defendant, Nelson S. Troche, appeals from a judgment of conviction of robbery in the second degree. The defendant and two others charged with the crime of robbery first degree, were tried together in Albany County Court.

The indictment charged robbery in the first degree, alleging that on April 13, 1957, the defendant and two others, George W. Kahler, Jr., and James J. Long, Jr., went to the apartment of one Robert Kent in the City of Albany and each being aided by the other as an accomplice actually present, against the will of

the said Kent and by means of force and violence, took certain personal property of the said Kent, who was thereafter found dead in his apartment, the cause thereof allegedly being due to asphyxiation resulting from a broken larynx. There were no witnesses to the occurrence and as to this defendant, no direct evidence of his being in the locale. The defendant did not confess the crime but to the contrary, gave a statement to the police shortly after his arrest in which he denied any knowledge of the alleged crime. The only testimony associating him with the occurrence was an alleged admission supposed to have been made by Troche to a witness Burke. Inasmuch as this is the nub of the case as to this defendant, we quote from the record with reference to the testimony of the witness Burke:

"Q. I call your attention to April, 1957, this past April, and ask you if you saw the three defendants at that time? A. Yes, sir.

\* \* \*

"Q. Did you have any conversation with them? A. Yes, sir, I did.

"Q. What was the conversation? A. They asked me if I wanted to go to a party.

"Q. Who did. A. James Long.

"Q. Who else was there? A. Troche and Kahler.

"Q. What else was said at that time? A. I told them I couldn't go."

Two or three days after this conversation Burke testified as to another conversation as follows:

"Q. Who did you first see? A. Saw James Long first.

"Q. Did you have a \* \* \* conversation with him? A. Yes, sir. He showed me the piece in the newspaper.

"Q. What was the piece in the newspaper? A. Of some man being killed in an apartment.

"Q. What else was said? A. That's all that we talked about for a while. Then George and Troche came over.

"Q. By George, you mean Kahler? A. Yes, sir.

"Q. And Troche? A. Yes.

"What was said then? A. They wanted to know what I was talking about. I told him I asked Jimmy Long about the piece in the paper.

\* \* \*

"Q. What else was said? A. If I said anything they would get even with me.

"Q. Who said this? A. Troche.

"Q. Did you have any further discussion with the three of them about this piece in the paper? A. No, sir.

"Q. Did they tell you what happened at the apartment? A. No, sir, just that they had a fight or something.

"Q. Did they say who had been down there? A. They said they were there, sir.

"Q. The piece in the paper was about a man being killed in this apartment? A. Yes, sir."

At the completion of the testimony, the District Attorney in his summation with reference to the newspaper stated that Burke said "[t]hat he talked with Long and Long had a newspaper account of what happened in Kent's apartment".

This was not only a misstatement of the fact but, considering the meager testimony associating this defendant with the commission of the alleged crime, highly prejudicial. There was no evidence as to the name of the newspaper or where it was published or what the article stated aside from the fact that there had been a fight and at best, the testimony was mere surmise and speculation.

The court in its charge said with reference to this conversation: "but I will charge you that when a person accused of a crime threatens another after the crime is discussed in his presence, telling him not to talk about the matter, such a threat, if believed by you, may constitute an admission of guilt and may be considered by you in determining the guilt of the person making the threat." The court then said: "On the other hand, as far as Troche is concerned, Burke's testimony is the only evidence in the case, which if accepted by you, would be sufficient, even with additional proof that a crime was committed, to establish Troche's guilt. In other words, if you do not accept Burke's testimony, there is no basis upon which you may convict the defendant Troche."

In the recent case of *People* v. *Leyra* (1 N Y 2d 199) the Court of Appeals, in discussing the rule of "consciousness of guilt", stated at pages 209 to 210: "Naturally enough, the courts have consistently acknowledged the weakness of this type of evidence, reflecting a consciousness of guilt, where it is not supported by other proof of a truly substantial character. * * * The courts of this state * * * have recognized that the inference of consciousness of guilt, though '"one of the simplest in human experience," may easily be pushed too far.' [Citing cases.] * * * '"[I]t [consciousness of guilt] operates ordinarily *only by way of lending strength to other than more tangible evidence*"' [citing cases]. (*People* v. *May,* 290 N. Y. 369, 373)."

In this case as in the *Leyra* case (*supra*) there is no "other and more tangible" evidence; there is only the threat that

defendant made to Burke. The testimony of Burke as quoted above shows that there is no evidence that the threat was in connection with the particular crime with which the defendant is charged. But, assuming that the threat had been proven to be in relation to the particular crime defendant was charged with, there is no other evidence in the record which relates to the defendant Troche and the alleged robbery. This defendant, not having confessed, was placed in a difficult position so far as the trial of the case was concerned — the other two defendants having signed written confessions involving Troche — and his rights should have been carefully, cautiously and in every minute detail protected. A reading of the record convinces us that the possibility of prejudice and the probability of the jury failing to observe the charge of the court — as to the exclusion of the other defendants' confessions in considering the guilt of Troche — may have been a determining factor in establishing his guilt. There is an insufficiency of probative evidence to sustain the conviction. From the oral arguments before this court by the District Attorney and the attorney for the defendant, it appears that there may have been matters beyond the record which added to the possible prejudice.

We find it not necessary to consider the other points of error raised by the appellant on this appeal.

The judgment of conviction of robbery in the second degree should be reversed and the indictment as to this defendant dismissed.

BERGAN, P. J., COON and GIBSON, JJ., concur, with HERLIHY, J.; REYNOLDS, J., votes to reverse and to direct a new trial.

Judgment of conviction of robbery in the second degree reversed and the indictment as to this defendant dismissed.