OPINION OF THE COURT
Wachtler, J.
Defendant was convicted, following a jury trial, of burglary in the first degree and robbery in the second degree. 'He argues on this appeal that the evidence of his guilt, being entirely circumstantial, did not establish his participation in these crimes beyond a reasonable doubt. We agree that the circumstantial evidence offered against defendant was insufficient, inasmuch as the facts adduced are not inconsistent with defendant’s innocence, nor does the evidence exclude to a moral certainty every reasonable hypothesis of innocence. The order of the Appellate Division should therefore be reversed and the indictment dismissed.
On the night of the acts for which defendant stands convicted, Angel and Gladys Burgos lived, along with their 21-year-old son and Angel’s brother Carlos, in a first floor apartment on West 121st Street between Amsterdam Avenue and Morningside Drive in Manhattan. At 1:00 a.m., Angel, who had been asleep on the living room floor, was awakened by an armed intruder, who threatened Angel with a handgun and demanded money. The intruder had apparently entered by way of the fire escape, which was directly beneath the living room window facing the street. Angel asked the gunman not to shoot and told him to take whatever money was in the trousers hanging over a chair. According to Angel’s testimony, he took $12 out of his trousers’ pocket and gave the money and the trousers to the gunman, who started emptying the contents of the pockets onto the floor. Gladys Burgos, who testified that she had been asleep in the front bedroom, was awakened by a commotion during which she heard her husband say, “Don’t shoot, don’t shoot”. She came into the living room as the gunman was going through Angel’s trousers. Gladys told the gunman that they had no more money and pleaded *364 with him not to shoot her husband. As she was standing a few feet from the fire escape window, Gladys heard a whistle from outside, followed by a man’s voice saying, “Hurry up”. The gunman glanced toward the window, then told the Burgoses to go into the bedroom and lie down on the floor. He dumped the contents of a cosmetics bag that was on top of a bureau and then left the apartment by the fire escape window. After the gunman was gone, Angel called the police and went to the window where he saw the gunman being chased by two security guards in the direction of Morningside Drive. The gunman was never apprehended.
Angel’s brother, Carlos, had been asleep in the rear bedroom when the intruder entered the apartment. He awoke to hear a conversation taking place in the living room and heard his brother ask someone what he wanted. He then heard his brother say, “Don’t fire, don’t fire”. Carlos awakened his nephew who was also asleep in the rear bedroom and warned him that a robbery was taking place, then removed his pajamas, put on a pair of pants and a shirt and jumped out the bedroom window. Although Carlos gave no definite time frame for these events, he indicated that his sister-in-law was already in the living room at this point. Carlos then proceeded through an alleyway alongside the building and went through a metal gate, coming out onto 121st Street. When Carlos arrived on the street, he saw the defendant, Herman Way, standing on the sidewalk, looking in the direction of the fire escape window, which was 10 to 12 feet above the ground. Carlos testified that he saw defendant look in the direction of Morningside Drive and then in the direction of Amsterdam Avenue. Carlos then ran down 121st Street toward Amsterdam Avenue, where he obtained the assistance of two security guards. As he did this, he saw defendant walking in the same direction. When defendant reached the intersection of 121st Street and Amsterdam, he hailed a taxicab, spoke with the driver momentarily and then continued walking, now south on Amsterdam Avenue. The police arrived a few moments later, and Carlos pointed them in the direction of defendant, who was still walking. Defen *365 dant was arrested between 120th and 119th Streets. He was not in possession of a gun or any proceeds of the crime.
As noted, the gunman was never apprehended. Defendant was tried alone, on a theory of accomplice, liability, for burglary in the first degree and robbery in the second degree. His conviction was affirmed by the Appellate Division, over the dissent of two Justices. We agree with the dissenting Justices that the proof was insufficient to support defendant’s conviction.
When a defendant’s conviction is based, as here, entirely upon circumstantial evidence of his guilt, it is subject to strict judicial scrutiny, not because of any inherent weakness in this form of evidence, but to ensure that the jury has not relied upon equivocal evidence to draw unwarranted inferences or to make unsupported assumptions (People v Kennedy, 47 NY2d 196, 201; People v Benzinger, 36 NY2d 29, 32). The well-settled standard of proof in such cases is that the facts from which the inference of defendant’s guilt is drawn must be “inconsistent with his innocence and must exclude to a moral certainty every other reasonable hypothesis” (People v Bearden, 290 NY 478, 480; see People v Cleague, 22 NY2d 363, 366).
Viewing the facts in a light most favorable to the prosecution and giving it the benefit of every reasonable inference to be drawn therefrom (People v Montanez, 41 NY2d 53, 57; People v Kennedy, supra, at p 203), we have no difficulty in accepting as reasonable the inference that the gunman had an accomplice waiting outside, acting as “lookout”. The testimony of Gladys Burgos that she heard a whistle and a warning from outside and saw the gunman glance toward the window leads naturally to that conclusion. Although Angel Burgos, standing a few feet away, heard nothing, his attention was riveted upon the intruder’s gun, and at worst, this presents an inconsistency which must be resolved in the People’s favor on this appeal.
The more critical question is whether defendant, seen standing outside the Burgos apartment, was the accomplice or a passerby innocent of any wrongdoing. Inasmuch as Carlos Burgos was the only witness who saw defendant standing outside the apartment and his testimony is insuf *366 ficient to establish defendant’s presence at any particular moment, the People rely entirely upon the sequence of events, as related by the three witnesses, to support both the inference that defendant was outside the apartment while the holdup was in progress and that he was the accomplice who warned the gunman to “hurry up”. Although we agree that it may fairly be inferred that defendant was outside and not far from the window of the Burgos apartment at some point during the holdup, we conclude that it cannot further be inferred that he was present at the moment when the warning was given, an inference which is necessary to a conclusion that defendant was the accomplice. No witness was able to testify to a time frame of events even approaching the precision necessary to accept the People’s theory of defendant’s guilt. That being so, and given the complete absence of proof of any prior relationship between the gunman and defendant, the connection between defendant and these crimes is simply too tenuous to support his conviction.
We agree with the dissenters in the Appellate Division that the present case is very similar to People v Cleague (22 NY2d 363, supra), in which this court held that the evidence upon which defendant’s conviction as an accomplice was based was not inconsistent with his innocence. In Cleague, a police officer on motor patrol in the early morning hours noticed defendant walking up and down in a used car lot, looking at automobiles. The officer stopped to observe defendant and saw him look up and down the street and walk twice toward the rear of a small wooden office building near the middle of the lot. The officer questioned defendant, who said he was looking at the cars. During this conversation, the officer noticed a shadow in the office building and upon entry apprehended a burglar who was in the act of carrying articles out the window.
Defendant’s explanation of his presence in the lot — that he stopped there to look at cars on his way to a restaurant — was uncontradicted, and the court noted that although it was unusual to be looking over cars at a time when the lot was closed for business, it was not an implausible circumstance. Given this explanation and the fact that defendant’s conduct could reasonably be viewed as that of an *367 innocent person, as well as the absence of proof of any connection or prior relationship between the burglar and defendant, the court held that the mere coincidence of defendant’s presence on the premises at a time when a burglary was taking place was insufficient evidence from which to infer guilt (id., at p 366).
Similarly, the coincidence of time, place and behavior occurring in the present case is sufficient only to create suspicion, and thus guilt has not been established with the requisite certainty. Although there is proof that the perpetrator had an accomplice, proof which was lacking in Cleague, critically absent is proof that defendant acted as that accomplice. Here, as in Cleague, defendant’s presence on a public street, not in itself unusual, is entirely consistent with innocence. That he looked up toward the open window of the Burgos apartment and looked up and down the street gives rise to no more than mere suspicion. Moreover, defendant’s conduct after he was first observed by Carlos Burgos does nothing to indicate the consciousness of guilt which in other cases has been found to add considerable strength to the other circumstantial evidence adduced (see, e.g., People v Benzinger, 36 NY2d 29, supra [false statement]; People v Wachowicz, 22 NY2d 369 [defendant took several “quick” steps away when police approached]; People v Davis, 41 NY2d 678 [implausible explanation given for presence, with bleeding hand, near shattered window of recently burglarized store]). Defendant’s conduct, in fact, in walking in the same direction as Carlos, toward two security guards, hailing a cab but not getting into it, and then continuing to walk down Amsterdam Avenue, apparently in no hurry to leave the area, might reasonably be viewed as inconsistent with guilt.
The People’s theory of the sequence of events and defendant’s participation as an accomplice is plausible and perhaps even consistent with all the established facts. It is possible that when Carlos observed defendant, his arrival had triggered the warning given the gunman inside. But it is not enough that the hypothesis of guilt accounts for all the facts proved (People v Montanez, 41 NY2d 53, 57, supra) for it is equally possible that when Carlos arrived on the sidewalk, the accomplice had already given the warn *368 ing and fled, and that defendant had arrived thereafter. Other reasonable explanations, particularly given the lack of a cohesive time frame, are possible, including that offered by the dissenters below. Given these hypotheses of innocence, it cannot be said that defendant’s guilt was proven with the requisite certainty.
Accordingly, the order of the Appellate Division should be reversed and the indictment dismissed.
Chief Judge Cooke and Judges Jones, Meyer and Simons concur with Judge Wachtler; Judge Jasen dissents and votes to affirm for the reasons stated in the memorandum of the Appellate Division (90 AD2d 718).
Order reversed, etc.