THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD O'HARA, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Westchester County (Delaney, J.), rendered March 6, 1984, convicting him of arson in the first degree, burglary in the second degree, criminal mischief in the first degree and criminal possession of a weapon in the first degree, upon a jury verdict, and imposing sentence.

Judgment reversed, on the law, and indictment dismissed. This case is remitted to the Supreme Court, Westchester County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

Defendant was convicted of various crimes, most notably arson in the first degree, in connection with damage purportedly caused by an explosion in the workshop of Robert "Tootsie" Ellard in the early hours on November 1, 1981. The prosecution's case against defendant was built upon circumstantial evidence. Ellard testified that he first met defendant on an August 16th (he could not remember the year) when defendant and a mutual acquaintance came to his workshop, located near his house, to discuss the repairing of defendant's motorcycle engine. Ellard's house and workshop are located in a remote, wooded area accessible by back or secondary roads. A price of approximately $600 was quoted for the repair; defendant left the engine and possibly some money. Some time later, during the "cooler months", Ellard met defendant at a Dunkin Donuts in the Town of Cortlandt in order to receive parts to aid in the repair of the engine. Defendant arrived with two people and gave Ellard a crankshaft and some money. Subsequently, at some unspecified time, defendant telephoned Ellard and a third meeting was scheduled at Oregon Corners in Putnam Valley so that defendant could bring more parts. (Ellard testified that he did not want defendant to come to his home.) Defendant arrived with one person. Ellard did not accept the parts offered by defendant. By this meeting, Ellard had received full payment for his work.

Ellard repaired the engine with parts that had been supplied by defendant. Approximately 1½ years passed without contact with defendant, and Ellard placed the engine in storage during this period. Defendant then appeared at Ellard's shop with three friends (one of whom had had prior dealings with Ellard at his house) and requested the motor. Ellard explained that it would take two weeks to retrieve the engine, and defendant ultimately agreed to wait. Thereafter, defendant and Ellard arranged to meet at Oregon Corners, which is approximately two minutes from Ellard's house by car. Defendant showed up with a person

Ellard had not seen before. After Ellard tendered the engine, defendant demanded certain parts. Ellard went back to his shop, picked up the parts and returned to Oregon Corners, where he gave them to defendant.

Some time later (once again, Ellard could not recall how much later), defendant telephoned Ellard and demanded certain additional parts. Ellard promised to mail defendant anything he wanted; defendant responded: "For a minute there I thought I would have to do something drastic". Ellard agreed to send the parts and the conversation ended. Ellard mailed the parts to defendant.

On the night of October 31, 1981, Ellard locked the padlock on his shop door. He was awakened some time that night by a "snap, snap" sound. One of his three dogs was next to him and barked. Ellard next heard a loud sound, like firecrackers, and paid it no further attention. In the morning, Ellard noticed the door to his shop was open and that the lock was cut. He found a five gallon can, filled with approximately five gallons of gasoline, inside the shop. Antifreeze which previously had been in a bucket was then all over the floor. Various items were scattered about, the walls were damaged by "shrapnel" and the insulation was ripped. State Police Trooper Santos Castro, Jr., responded to the premises and noticed a grey mist in the shop. State Police Investigator Robert Stapleton, a former demolition expert in the Green Berets, found a one-pound, "Meteor" brand, can of black powder taped to the gas can. An artillery simulator, or a firecracker, was taped to the meteor can. An empty gunpowder or black FFG powder can was found in several parts in the workshop. A burnt powder residue covered the interior of the shop.

Ellard reported that various engine parts for a Harley Davidson Sportster were missing from his workshop. He also informed Investigator Stapleton that he had had trouble with only one person and gave him a piece of paper which contained, allegedly in his wife's handwriting, a telephone number and defendant's nickname. The name "Richie O'Hara" was also on the paper. At trial Ellard claimed the name was in his wife's handwriting; Investigator Stapleton identified the handwriting as his own.

Significantly, the FFG black powder can bore a price tag with the name "EDELMAN's" and a lot number. Stapleton determined that 2,050 cans with the same lot number had been manufactured. Of these, 75 were shipped to Leslie Edelman's sporting goods store in Farmingdale, Long Island. An employee of Edelman's testified that up to 130 such cans could have been received by his store. In going through New York State Department of Labor forms, Stapleton discovered that on September 16, 1979, a

person representing himself to be Richard Thomas O'Hara had purchased one can of FFG black powder with the particular lot number at Edelman's. He was unable to ascertain what had happened to the other 74 cans.

The jury was invited to compare the signature of the purchaser of the black powder, who had identified himself as Richard Thomas O'Hara, with a signature entered by defendant on a fingerprint card following his arrest. The date of the arrest is unclear from the arresting officer's testimony. Defendant was arrested at his Queens residence on March 23 of either 1982 or 1983. The arresting officer noticed a box with a motorcycle carburetor in defendant's kitchen. It was further established that no motor vehicle was registered to defendant and that he did not have a valid driver's license.

Defendant did not testify but presented seven witnesses on his behalf, four of whom testified in support of his alibi. Their collective testimony was to the effect that defendant was at a Halloween party in a Queens bar from at least 10 P.M. on October 31, 1981 until 4 or 5 A.M. on November 1, 1981.

The jury found defendant guilty of arson in the first degree, burglary in the second degree, criminal mischief in the first degree and criminal possession of a weapon in the first degree, but acquitted him of grand larceny in the third degree.

On this appeal, we must view the facts in a light most favorable to the prosecution, give the People the benefit of every reasonable inference to be drawn from the evidence, and assume that the jury credited the prosecution's witnesses (*People v Way,* 59 NY2d 361, 365; *People v Kennedy,* 47 NY2d 196, 203). The People concede that any single piece of evidence might be equivocal, but urge that when viewed in its entirety, the evidence supports the convictions. To connect defendant with the damage that occurred to Ellard's workshop, the People primarily rely upon the following circumstances: the existence of a business dispute between defendant and Ellard, defendant's statement over the telephone that he thought he would have had to have done something "drastic" had Ellard not agreed to mail him certain parts, Ellard's naming of defendant as the only person with whom he had had "trouble", the claim that the missing parts could have been used in defendant's motorcycle, the arresting officer's observation of a motorcycle carburetor in defendant's kitchen, defendant's purchase of a can of FFG black powder of the same lot number and from the same store as the can found in the workshop and the fact that the purported arson occurred in a remotely located workshop to which defendant had traveled on two occasions. Nevertheless, we view the evidence as falling below the amount required to sustain the convictions.

The central inference that defendant was present at Ellard's workshop at the time the damage was done was drawn, among other things, from the discovery of the powder can and from Ellard's claim that certain motorcycle parts were missing (which parts allegedly could be utilized by defendant). The arresting officer's observation of a motorcycle carburetor in defendant's kitchen months after the event adds nothing to the analysis; there was no proof that the carburetor had ever been in Ellard's possession. Assuming defendant did purchase a can of FFG black powder at Edelman's on September 16, 1979 (over two years before the alleged crimes were committed), there was still no proof that the same can was found in defendant's workshop. Even if defendant did purchase the can that was discovered in the shop there is still no testimony to place that can in defendant's possession at a point in time even remotely close to October 31, 1981 (*see, People v Vitalis,* 67 AD2d 498, 504). Defendant's statement on the telephone, which the prosecution interpreted as a threat, was of an equivocal nature at best (*see, People v Santos,* 90 AD2d 982; *People v Vitalis, supra,* p 505). The fact that the workshop was located in a remote area to which defendant had twice traveled over a period of time which spanned at least 1½ years is similarly subject to different inferences. We also note that on both visits defendant was accompanied by someone who knew how to get there. The parts purportedly taken from Ellard's workshop could presumably be used for motorcycles other than defendant's. Finally, Ellard's naming of defendant as the only person he had had trouble with in the past does not adequately connect defendant to the instant offense. It cannot be said that the hypothesis of defendant's guilt flows naturally from the facts proved or that the facts proved exclude to a moral certainty every reasonable hypothesis of defendant's innocence of the crimes charged (*People v Benzinger,* 36 NY2d 29). Hence, the judgment must be reversed and the indictment dismissed. In view of our resolution of this issue, it is unnecessary to address the other contentions urged by defendant on appeal. Weinstein, J. P., Brown, Niehoff and Lawrence, JJ., concur.