Titone, J.
(dissenting). Today, this Court holds for the first time, albeit without any support in the precedent of this or any other jurisdiction, that a criminal defendant’s credibility may be impeached, not only with his own prior convictions, but also with the prior convictions of a corporation of which he is an officer and shareholder. Because my own analysis leads me to conclude that absent a factual showing that defendant was somehow culpable in the corporation’s crimes, they simply have no logical bearing on his credibility, I respectfully dissent.
Unlike the majority, I see no basis under the facts of this case for presuming defendant’s complicity in the corporate crimes which the Trial Judge ruled could be used to impeach his credibility.[1] However, unless we presume that defendant *277 participated in those crimes they simply are irrelevant as to whether he would testify truthfully. While it is undisputed that defendant was the corporation’s chief stockholder and president at the time the corporate crimes were committed, that alone does not establish that he participated in any illegal activities. Indeed, under the laws of this State there are numerous situations in which a corporation, even a closely held one, may be held criminally liable for the acts of its agents and employees despite the lack of any wrongdoing on the part of those who own, operate and manage the business. For instance, under section 20.20 of the Penal Law, a corporation may be convicted of an offense when: "The conduct constituting the offense is engaged in by an agent of the corporation while acting within the scope of his employment and in behalf of the corporation, and the offense is (i) a misdemeanor or a violation, (ii) one defined by a statute which clearly indicates a legislative intent to impose such criminal liability on a corporation or (iii) any offense set forth in title twenty-seven of article seventy-one of the environmental conservation law.” (Penal Law § 20.20 [2] [c] [emphasis added].)[2] For purposes of this section, an agent is broadly defined as including an "employee of [the] corporation, or any other person who is authorized to act in behalf of the corporation” (Penal Law § 20.20 [1] [a]). Significantly, the corporation may be held criminally liable even where those charged with supervising its affairs (i.e., its officers and directors) have exercised due diligence to prevent the commission of the offense (see, Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 20.20, at 70; cf., Model Penal Code § 2.07 [5]).
In light of this statutory scheme, it is difficult to perceive how the mere fact that a corporation has been convicted of a crime has any bearing on a particular individual’s credibility without a further showing linking the person to the criminal conduct underlying the conviction. Indeed, such a requirement would have been especially apt in the present case, where subsequent to the Trial Judge’s Sandoval ruling, defendant was actually acquitted of having engaged in any criminal wrongdoing with regard to one of the corporation’s convictions *278 which it was ruled could be used to impeach his credibility.
Nor can I concur in the majority’s legal sufficiency analysis. The proof adduced at defendant’s trial was woefully inadequate to support his conviction of criminal possession of a forged instrument in the second degree. In order to establish defendant’s guilt of that crime, it was incumbent upon the People to show that he knowingly uttered (i.e., presented) the forged manifest in question with intent that it be acted upon (Penal Law § 170.25), or that he had someone else in his company do so (Penal Law §§ 20.00, 20.25). The evidence introduced in this regard, however, was at best, equivocal.
Essentially, the People argued that because defendant was the president and owner of the corporation, and needed to dispose of its stored hazardous waste since its interim permit had been terminated, he must be guilty. Those facts, however, merely tended to show that defendant may have had a motive to have the manifest forged (see, People v Marin, 65 NY2d 741, 745 ["evidence of a possible motive * * * cannot take the place of proof of the accused’s actual commission of the crime”]); they certainly did not, even when viewed together with the other evidence of defendant’s guilt, "exclude to a moral certainty every other reasonable hypothesis save guilt” (majority opn, at 273 [emphasis added]) — the test applicable in cases such as this where the prosecution’s evidence is entirely circumstantial (see, People v Marin, supra, at 742; People v Sanchez, 61 NY2d 1022, 1024; People v Way, 59 NY2d 361, 365; People v Bearden, 290 NY 478, 480).
Thus, unless there was other proof, circumstantial or otherwise, that defendant participated in the crime itself, his conviction cannot stand. The tape-recorded statements from the January 25th meeting, upon which the majority rely, however, do not provide this proof, as they indicate nothing more than that defendant learned of the forgery as the result of his telephone conversation with Mr. Fox a week earlier and wanted to attempt to minimize any damage to his company’s reputation in the eyes of a "long-standing customer”[3] (see, People v Marin, supra, at 746 ["Evidence said to indicate *279 consciousness of guilt is generally considered weak proof of the commission of a crime.”]). The People, however, had to demonstrate that defendant knew of the forged manifest on December 20, the date it was delivered to Industrial’s driver.
The majority’s bald assertion that the evidence introduced at defendant’s trial indicated that the "manifest[ ] [was] filled out at defendant’s corporate offices out of which he exclusively worked” (majority opn, at 274; see also, majority opn, at 273) suggests the existence of evidence from which the jury could rationally conclude that the manifest was actually prepared in defendant’s presence. The only evidence, however, that can be said to be even remotely on point is the testimony of a secretary employed by defendant’s company who stated that it was possible that she may have prepared the manifest. Apparently, because this secretary worked in the same building as defendant, albeit on an entirely different floor, the majority concludes that it can reasonably be inferred that defendant was aware of the forged manifest. Such an inference, however, is not only speculative;[4] it is also inconsistent with that same witness’ unrebutted testimony that defendant never saw any of the company’s manifests since his brother, William Mattiace, the person who the People acknowledge actually delivered the manifest to Industrial’s driver on December 20 (People’s brief, at 6), handled that part of the company’s business.
Thus, the People failed to prove their case against defendant. The conclusions drawn by the majority simply do not logically flow from the evidence that was presented, and, in my view, amount to nothing more than "unsupported assumptions drawn from evidence equivocal at best” (People v Kennedy, 47 NY2d 196, 202). Accordingly, I dissent.
Chief Judge Wachtler and Judges Simons and Hancock, Jr., concur with Judge Bellacosa; Judge Titone dissents and votes to reverse in a separate opinion in which Judges Kaye and Alexander concur.
Order affirmed.

. This is apparently the same presumption that the majority applies in its legal sufficiency analysis (see, infra).

. Two of the corporate convictions in question were misdemeanors; the third, while a felony, was defined in title 27 of article 71 of the Environmental Conservation Law. Thus, all three convictions fell within the scope of Penal Law § 20.20 (2) (c).

. The People acknowledge that Mr. Fox’s company was a "long-standing customer” of defendant’s corporation (People’s brief, at 21). Thus, contrary to the People’s assertions, it was only natural that he would be disinclined to concede any wrongdoing on the part of those in his company who may have been involved in forging the manifest, as any such concession would probably have adversely affected the business relationship between the two companies.

. Further, even if it could be inferred that the manifest was prepared in the same building as defendant worked, the record is absolutely bereft of any evidence that defendant was actually present in the building at the time.