People v Williams (2023 NY Slip Op 02467)

People v Williams

2023 NY Slip Op 02467

Decided on May 09, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 09, 2023

Before: Webber, J.P., Oing, Scarpulla, Mendez, Rodriguez, JJ. 

Ind No. 735/17 Appeal No. 17493 Case No. 2018-2682 

[*1]The People of the State of New York, Respondent,
v
Raymond Williams, Defendant-Appellant.

Caprice R. Jenerson, Office of Appellate Defender, New York (Margaret E. Knight of counsel), and Cleary Gottlieb Steen & Hamilton LLP, New York (Tyler Good-Cohn of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Anna Notchick of counsel), for respondent.

Judgment, Supreme Court, New York County (Daniel P. FitzGerald, J.), rendered October 20, 2017, convicting defendant, after a jury trial, of burglary in the third degree, and sentencing him, as a second felony offender, to a term of 3½ to 7 years, affirmed.
Defendant was charged with burglary in the third degree based on allegations that on January 19, 2017 he knowingly entered the CVS store located at 300 Park Avenue South unlawfully, with the intent to commit a crime therein. On appeal defendant argues that the verdict was based on legally insufficient evidence and against the weight of the evidence, and that his sentence was excessive.
For a verdict to be legally sufficient, there must be "competent evidence, which if accepted as true, would establish every element of an offense charged and the defendant's commission thereof" (CPL 70.10[1]). In conducting a sufficiency of the evidence review, all facts are viewed in the light most favorable to the People (See People v Kancharla, 23 NY3d 294, 302 [2014]. "Weight of the evidence review [on the other hand] requires an intermediate appellate court to act, in effect, as a second jury (People v Kancharla, 23 NY3d 294, 302-03 [2014], citing People v Romero, 7 NY3d 633, 644 n 2 [2006). In conducting weight of the evidence review, this Court must "first . . . determine whether an acquittal would not have been unreasonable. If so, the court must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions. Based on the weight of the credible evidence, the court then decides whether the jury was justified in finding the defendant guilty beyond a reasonable doubt" (People v Danielson, 9 NY3d 342, 348 [2007], citing People v Crum, 272 NY 348 [1936]). Here, the evidence, when viewed in the light most favorable to the People, establishes every element of burglary in the third degree. Further, that evidence shows that the verdict was not against the weight of the evidence.
To be found guilty of burglary in the third degree, a defendant must "[1] knowingly enter or remain unlawfully in a building [2] with intent to commit a crime therein" (Penal Law § 140.20). Defendant's knowledge that his entry into the CVS was unlawful was established by the trespass notice that he signed on September 29, 2016, barring him from entering any CVS store from that date forward because of an alleged previous theft from a CVS store.
The evidence also supported the jury's finding that defendant entered CVS with the intent to commit a crime (see Penal Law § 140.20; People v Lindsey, 203 AD3d 411, 411 [1st Dept 2022], lv denied 38 NY3d 1008 [2022]). The surveillance video shows defendant walking past the CVS store while looking inside, and then returning a few seconds later and entering the store. This conduct was consistent with defendant surveying the store to determine whether he should go in and take property or whether anyone might recognize [*2]him as a prohibited customer. Defendant's arguably furtive behavior continued after he entered the store. As he walked down aisle nine, he looked over his shoulder several times, conduct which the jury could certainly find was consistent with trying to make sure that he was not being watched (see Lindsey, 203 AD3d at 411 ["Defendant's larcenous intent . . . could be reasonably inferred from the entire course of conduct . . . even if defendant sometimes acted like an innocent shopper"]).
We disagree with the dissent that the surveillance video supports a reasonable inference that defendant was planning to purchase the two cans of Red Bull because he has "what appears to be cash" in his hand, while walking toward the front of the store. The record indicates that when defendant walked down the store aisle, toward the front of the store, holding a can of Red Bull in each hand, the store manager told him to stop. She then told defendant that he did not belong in CVS, and asked defendant to leave and to give her the two cans. Defendant apparently "became upset," put the two cans down and immediately left the store. Defendant never indicated that he intended to buy the two cans of Red Bull or made any effort to pay for them. Following his arrest, defendant admitted to police that "[he] was thirsty, [he] need[ed] something to drink[,]" and that "all [he] took was a Red Bull." In fact, the defense never sought to prove that defendant was carrying cash in his hand or made such an argument to the jury. This argument is purely speculative. The jury viewed the video and was able to decide for itself whether the video was "grainy" as well as what reasonable inferences could be drawn from the defendant's actions.
Defendant's excessive sentence argument is moot because he has completed all components of his sentence (see People v Papanye, 159 AD3d 482, 483 [1st Dept 2018], lv denied 31 NY3d 1085 [2018]).
All concur except Mendez, and Rodriguez, who
dissent in a memorandum by Mendez, J. as follows:

MENDEZ, J. (dissenting)
 

In my opinion the evidence is legally insufficient to prove that defendant entered the CVS store with the intent to commit a crime therein, thereby negating an essential element of the crime of burglary in the third degree. The verdict, in my opinion, is also against the weight of the evidence.
Defendant was arrested on February 21, 2017, and charged with two counts of burglary in the third degree for allegedly removing multiple cans of Red Bull from two separate CVS locations in Manhattan, approximately four hours apart, on January 19, 2017. The first count of the criminal complaint alleges that a manager at the CVS location at 215 Park Avenue South observed defendant remove four Red Bull cans from a store display, place them in a bag and leave the store without paying for them.
The second count of the complaint alleges that a loss prevention officer at the CVS location at 300 Park Avenue [*3]South observed defendant remove two Red Bull cans from a store display, place them in a bag, bypass the cash registers and attempt to leave the store without paying.
The criminal complaint also alleges that defendant was issued a trespass notice on September 29, 2016, which advised defendant, in substance, that his license and privilege to enter CVS locations was revoked and that defendant knew he was not allowed to enter CVS locations because he had signed the trespass notice.
At the time of his arrest defendant waived his Miranda rights and agreed to a videotaped interrogation by the arresting officer. During the interrogation, the officer conflated the incidents that occurred at the two separate locations, asking questions and providing facts simultaneously about each incident. The full interrogation revealed that defendant was confused, unable to distinguish the events that occurred in the two incidents and had a poor recollection of the facts and the details, most of which were provided by the arresting officer.
In fact, the officer provided incorrect factual details of the incident at 300 Park Avenue South. She asked defendant if he remembered that he grabbed a Red Bull, "put it inside a plastic bag" and a woman "came to you and . . . took it out of your bag." Defendant asked, "Red Bull?" to which the officer stated, "Yes, some sort of drink or something." Defendant stated, "Ah it was a Red Bull." When told by the officer that he was not supposed to be at the 300 Park Avenue South CVS location defendant acted surprised, shook his head and responded "300? Nah." When shown the trespass
notice defendant asked, "which CVS is this?" The officer stated, "it doesn't matter" where he received the trespass notice because the notice made it clear that he "was not allowed to enter any CVS." While the officer explained that defendant was not allowed to be in any CVS location defendant stated, "Yea, I was sick, I'm going to be honest. I was on drugs, I was thirsty, I was high, I need[ed] something to drink. That's all I took was a Red Bull." The officer then told defendant that an employee said to him, "you know you're not supposed to be in here," defendant paused and replied, "I'm trying to see, which CVS?"
When the officer told defendant how the employees at the 300 Park Avenue South CVS knew who he was and recognized him, he stated, "I'm going to tell you the truth. I'm not going to lie: I took one Red Bull." The officer said, "300 Park Ave says you took two, but I think she took them back. . . I think she took one back if I'm not mistaken." Defendant said, "yeah, you're right". After a brief interchange, defendant stated,
"I did it. I did it. I'm not going to say I didn't do it — I did it, it's bringing
back memories. I was high running around crazy doing drugs and I was
running, I was thirsty. I did have the Red Bull, the other Red Bull, I drunk it.
I'm not going to lie . . . [and] then the lady told me to put it [*4]back. I said,
hey, I told her I was thirsty and that's all I took out was a Red Bull, that's it."
Defendant was indicted on one count of burglary in the third degree, for the incident that occurred at the 300 Park Avenue South CVS location only.
At trial, the CVS supervisor testified that she had seen defendant in the store in December 2016 and recognized him when he entered the store on the day of the incident as an individual who had previously received a CVS trespass notice.
She saw defendant walk to aisle ten at the back of the store, where the Red Bull and Monster coolers were located, and had the cashier page the manager. She also saw defendant take two Red Bull cans from the cooler and hold one in each hand as he walked toward the front of the store. When defendant got to the front of the store, he and the manager exchanged a few words. The manager "[told] him stop. Give the items. You don't belong here." Defendant became upset, "slammed the items down and left." When he left, he did not have the Red Bull cans with him because the manager took them from him.
The incident at the 300 Park Avenue South CVS store was captured on surveillance video. The video shows defendant entering the store holding a plastic bag in his left hand and what appears to be cash in his right hand. He walks to the right of the entrance, down aisle nine, glances back over his shoulder, and continues to walk around the shelves and into aisle ten where the coolers are located. Defendant opens the Red Bull cooler and takes out two Red Bull cans, holding one in each hand, and proceeds to walk to the front of the store. As he walks to the front, he passes the store exit doors, which briefly open to let out a customer. Defendant does not head for the exit, instead he continues toward the area where the cashier and self-checkout registers are located. Still holding the two Red Bull cans in his hands he is approached by the manager who takes the cans from his hands and then defendant is seen leaving. The manager takes the two Red Bull cans, turns them upside down and nothing spills out, and places them in a cooler near the front of the store. The video does not show defendant drinking a Red Bull inside the store or concealing any Red Bull cans inside the bag he is holding, or anywhere else on his person.
The shift supervisor never testified that she saw defendant drink a Red Bull inside the store or that she saw him conceal any Red Bull cans inside the bag he was holding or anywhere else on his person. When shown the video, she confirmed that defendant always held the two Red Bull cans in his hands and stopped at the front, by the cashier and self-checkout registers, where he was confronted by the manager. He handed the manager the Red Bull cans, which were full, and left the store without any Red Bull cans in his hands. The video confirmed the shift supervisor's testimony except that it did not show defendant slam the Red Bull cans on the floor — the [*5]cans were taken from his hands by the manager - nor does it show that the Red Bull cans were placed to the side to be scanned.
At the close of the People's case defendant moved for a trial order of dismissal based on the People's failure to establish that when defendant entered the store, he had the concurrent intent to commit a crime therein. Defendant further argued that the People failed to establish that he had committed a trespass.
During summation, the People harped on defendant's purported confession, although it was not corroborated by any evidence. The prosecutor told the jury:
"You saw the video just before lunch. It's in evidence should you choose
to review these portions, but I'm reading from the aided transcript that
you have been provided and which you'll have back in the jury room as
well.
He said I did have the Red Bull. The other Red Bull I drank it. I'm not
going to lie. I drank it in the store and the lady told me to put it back.
He went to that location. He drank one of the Red Bulls and put the
other one back in the refrigerator area, and then [the manager] ended
up taking those two cans one empty one full. He finishes the story
for us.
It was clear before that he intended to take those Red Bulls without
paying for them, but it's certainly clear now with the defendant's own
words." (emphasis added).
A redacted transcript of the videotaped interrogation was provided to the jury during their deliberations.
A person is guilty of burglary in the third degree when "he knowingly enters or remains unlawfully in a building with intent to commit a crime therein" (Penal Law § 140.20). A person enters or remains unlawfully in or upon premises when he is not licensed or privileged to do so (Penal Law § 140.00[5]; People v Graves, 76 NY2d 16, 22 [1990]). To prove a burglary the prosecution must establish that there was a criminal trespass onto premises and that at the time of the entry or while remaining unlawfully in the premises the trespasser intended to commit a crime (People v Smith, 87 AD3d 920 [1st Dept 2011], affd 22 NY3d 1092 [2014]). There can be no burglary unless the trespasser intends to commit a separate crime when entering or remaining unlawfully in the building. Burglary is thus an aggravated form of criminal trespass, in which the aggravating factor is the trespasser's intent to commit a separate crime (see People v Cahill, 2 NY3d 14, 64 [2003], citing People v Gaines, 74 NY2d 358 [1989] and People v Henderson, 41 NY2d 233 [1976]).
A person acts intentionally with respect to a result or to conduct described by a statue defining an offense when his conscious objective is to cause such result or to engage in such conduct (Penal Law §15.05 [1][emphasis added]). To prove that defendant committed burglary in the third degree the People were required to prove that defendant entered or remained in the CVS store at 300 Park Avenue South, a public place, without [*6]any license or privilege to be there, and that when he knowingly entered, or while remaining in the premises, his conscious objective was to commit a crime, in this case a larceny.
Although "the intent necessary for burglary can be inferred from the circumstances of the entry itself" (People v Ocasio, 167 AD3d 412, 412 [1st Dept 2018] [defendant attempted to pick a lock on the door of a store while in possession of a screwdriver, pliers and flashlights, while wearing gloves and a ski mask with only his eyes showing and tried to flee when the police arrived], lv denied 32 NY3d 1208 [2019]; People v Pena, 176 AD2d 971, 972 [2d Dept 1991] [lock to a workroom in the basement of a building broken and defendant in possession of property which had been in the workroom]; People v Davis, 41 NY2d 678, 679 [1977] [breaking storefront window]), and at times from defendant's mere presence in the premises (Matter of Andrew R., 29 AD3d 321, 323 [1st Dept 2006] [entry into a closed day care center on a Sunday through an opened window]; Matter of Tyshawn J., 304 AD2d 331, 331-332 [2003] [remaining in commercial premises well after the close of business, when there was no receptionist at the front desk, the lights were off, there was no one in the interior offices and there were posted signs instructing visitors not to go beyond the reception area]), intent cannot be inferred from defendant's entry or from his mere presence in the 300 Park Avenue South CVS store (People v Lewis, 5 NY3d 546, 551-553 [2005] [[u]nlawful entry alone does not constitute intent to commit a crime inside the premises]). Therefore, the prosecution was required to prove the intent element of the offense through defendant's conduct.
"A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof" (Penal Law§155.05[1]). "Property means any. . . personal property. . . or any article. . . or thing of value" (Penal Law§ 155.00[1]). "To deprive another of property means (a) to withhold it or cause it to be withheld from him permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to him " (Penal Law§ 155.00[3][emphasis added]). "To appropriate property of another to oneself or a third person means (a) to exercise control over it permanently or for so extended a period or under such circumstances as to acquire the major portion of its economic value or benefit " (Penal Law § 155.00[4] [emphasis added]). A person is guilty of petit larceny when he "steals property" (Penal Law § 155.25).
In this case the People were required to prove that when he entered the CVS store at 300 Park Avenue South defendant's conduct showed that his conscious objective was to steal property. However, the evidence submitted to the jury was not legally sufficient to prove [*7]that the defendant entered the CVS store with the conscious objective to steal property, or that while at the store he stole property. 
Evidence of guilt is legally sufficient if the facts, viewed in the light most favorable to the People, provide a valid line of reasoning and permissible inferences from which the finder of fact could have rationally concluded that the elements of the crime were established beyond a reasonable doubt (People v Kancharla, 23 NY3d 294, 302 [2014]; People v Danielson, 9 NY3d 342, 349 [2007]; People v Bleakley, 69 NY2d 490, 495 [1987] see also CPL 70.10[1] ["evidence is not legally sufficient when corroboration required by law is absent"]).
When the proof submitted by the prosecution is susceptible to a reasonable innocent explanation, the evidence is legally insufficient and the trier of fact lacks any basis for concluding beyond a reasonable doubt that the defendant committed the charged offense (People v Way, 59 NY2d 361 [1983]; People v Albright, 59 AD3d 336, 337-338 [1st Dept 2009]; People v Serrano, 55 AD3d 450, 451 [1st Dept 2008]).
The evidence submitted by the prosecution, in the nature of the surveillance video footage and the supervisor's testimony, is susceptible to an innocent explanation; that defendant entered the CVS store at 300 Park Avenue South to purchase Red Bull. That the video shows him looking over his shoulder once as he walks to the rear of aisle nine is not conduct indicative of guilt (see People v Way, 59 NY2d at 367). The supervisor did not see defendant drink a Red Bull or conceal the cans in the plastic bag he was holding or anywhere else on his person. She saw him walk to the back of aisle nine, go to aisle ten, take two Red Bull cans from the refrigerator and walk to the front of the store, with the cans visibly in each hand. The video confirms the supervisor's testimony and shows that he went past the exit doors and stood next to the cashier and self-checkout register when he was confronted by the manager who took the two Red Bull cans from his hands. Because his actions were susceptible to a reasonably innocent explanation, the verdict was not supported by legally sufficient evidence. Furthermore, the jury verdict was against the weight of the evidence. As stated by the Court of Appeals, addressing its concern about the incidence of wrongful convictions and the prevalence with which they have been discovered in recent years:
'The unfortunate fact is that juries occasionally do not return proper
verdicts. An important judicial bulwark against an improper criminal
conviction is not only the restrictive scope of review undertaken during a sufficiency analysis, but the protection provided by weight of the evidence examination in an intermediate appellate court. This special power requires
the court to affirmatively review the record; independently assess all the
proof; substitute its own credibility determinations for those made by the
jury in an appropriate case; determine [*8]whether the verdict was factually
correct; and acquit a defendant if the court is not convinced that the jury
was justified in finding that guilt was proven beyond a reasonable doubt.
A conviction that was not in accord with the weight of the evidence results
in an unreviewable order that rectifies an unjust conviction and precludes subsequent re-prosecution" (People v Delamota, 18 NY3d 107, 116-117 [2011]).
In conducting our weight of the evidence review, we must view the evidence in a neutral light and evaluate whether all the elements of the crime for which the defendant was convicted were proven beyond a reasonable doubt, especially, where as here, a different verdict would not have been unreasonable (People v Williams, 156 AD3d 1224, 1225-1226 [3d Dept 2017], lv denied 31 NY3d 1018 [2018]). Viewing the evidence in a neutral light and according deference to the jury's credibility determinations, the only logical conclusion is that the prosecution failed to prove the elements of the crime of burglary in the third degree beyond a reasonable doubt. No rational view of the evidence can lead the trier of fact to the conclusion that the defendant intended to steal property from the CVS at 300 Park Avenue South. The only eyewitness did not see him take or conceal any property. The video did not capture him taking or concealing any property. On the contrary, his conduct inside the store was always susceptible to an innocent explanation.
The prosecution points to defendant's purported "confession." However, defendant's "confession" conforms to the arresting officer's version of events. The officer merged facts relevant to two separate incidents, thus blurring the separate features of each incident into a single event (see People v Castillo, 47 NY2d 270, 275 [1979]). "The law in New York is well settled that a person may not be convicted of any offense solely upon evidence of a confession or admission made by him without additional proof that the offense charged has been committed" (People v Danzy, 104 AD2d 949, 952 [2d Dept 1984]; see CPL 60.50). The statements made by the defendant in the purported "confession" were not corroborated by even the slightest admissible evidence.
Neither the supervisor's testimony, nor the surveillance video corroborated defendant's confession. There was no proof that defendant took more than two Red Bull cans, that he drank a Red Bull in the store, that he concealed any Red Bulls in the plastic bag he was holding or on his person, or that he returned any Red Bull cans to the refrigerator. The only Red Bull cans he took from the refrigerator were always visibly in his hands, until he handed them over to the store manager as he was standing by the registers.
Therefore, this verdict is clearly not supported by the record. There is an alternative and innocent explanation for defendant's conduct. Accordingly in my
opinion, the verdict should be reversed (People v Magnuson, 177 AD3d 1089, 1093-94 [3d Dept 2019[*9]], People v Person, 74 AD3d 1239 [2d Dept 2010], lv denied 17 NY3d 799 [2011], citing People v Serrano, 55 AD3d 450, 451 [1st Dept 2008).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 9, 2023