Breitel, J.
Defendant appeals from a judgment of the Appellate Division unanimously affirming, without opinion, a judgment of the Erie County Court. Defendant stands convicted of burglary in the third degree and petit larceny, following a nonjury trial in the County Court, with a sentence to Elmira Reformatory.
The sole question is whether the circumstantial case against defendant was sufficient, as a matter of law, to establish his guilt beyond a reasonable doubt. Viewed most favorably to the Peo *365 pie, the record establishes that a burglary and larceny were committed, but does not give rise to a strong inference that defendant played a culpable role in the commission of these criminal acts. Since the People’s proof was thus deficient, the conviction should be reversed.
Defendant Allen Cleague was jointly indicted with one Henry Brown for burglary in the third degree and petit larceny. The charges against Brown were “ Disposed of ” prior to trial. The proof against defendant consisted of testimony by the arresting officer, Michael Chernetsky, and a stipulation of fact. Defendant testified in his own behalf.
Police Officer Chernetsky testified that, while on motor patrol at 1:30 a.m. on the night of March 3,1965, he noticed defendant Cleague walking up and down a used car lot, looking at the automobiles. The lot was owned by Brest Motors, which also maintained an office in a small wooden building halfway to the rear of the lot. Officer Chernetsky stopped the patrol car and for several minutes observed defendant, who was looking up and down the street. On two occasions defendant walked toward the rear of the office building. Thereafter, the officer stopped and questioned defendant, who stated that he was looking at the cars. During the conversation, the officer noticed a “ shadow ” in the office. He and his partner entered the rear of the office and there apprehended Henry Brown, who was carrying clothing and other articles from a window.
The arresting officer’s testimony and the facts stipulated to by defendant established that the office had indeed been burglarized on the evening in question. The evidence also established that Brown was guilty of burglary and petit larceny. However, there was no competent evidence tying the defendant in any way to Brown*, and defendant denied ever having met Brown prior to their arrest. Thus, defendant’s conviction could be sustained only if his conduct, in the circumstances, was indisputably that of an accomplice or “ lookout.” But in fact defendant’s conduct could reasonably be viewed as that of an innocent person.
The well-settled rule in criminal cases with respect to those which depend exclusively upon circumstantial evidence is that “ the facts from which the inference of the defendant’s guilt *366 is drawn must be established with certainty—they must be inconsistent with his innocence and must exclude to a moral certainty every other reasonable hypothesis ” (People v. Bearden, 290 N. Y. 478, 480). The failure to satisfy that standard raises a question of law reviewable in this court (Cohen and Karger, Powers of the New York Court of Appeals, p. 743, and cases cited).
Consequently, in order for the conviction to stand, the facts in this case, viewing them most favorably to the People, must be inconsistent with defendant’s innocence and must also exclude to a moral certainty every other reasonable hypothesis.
When questioned by Officer Chernetsky. at the scene, defendant stated that he was merely looking at the automobiles on the lot. At. trial defendant took the stand to repeat this story, explaining that he had stopped at the lot while on his way to a restaurant for dinner. This explanation was not contradicted, nor was it inherently incredible, even though many would regard it as unlikely. In light of this explanation for defendant’s behavior, the suspicious circumstances prior to his arrest do not compel the inference that he was an accomplice or a “ lookout,” or exclude to a moral certainty his guiltless behavior.
While it is unusual at that hour for a man to look over the assembled automobiles in a used car lot not open for business, either out of curiosity or in considering them for possible purchase, it is not an implausible circumstance. Otherwise, it would suggest that Sunday and night window-shoppers are engaged in conduct pointing to some criminal scheme, present or prospective, and would regard as suspicious one of the most common of human activities. The only other circumstance in the case is the coincidence of the burglarious activities of Brown, a person who, so far as this record is concerned, was not known to defendant. But this is not a circumstance which by itself is connected with defendant, and hence never rises above the merest coincidence, any more than would the circumstance that a place at which a pedestrian happens to be window-shopping should then be the site of a burglary.
Very close to this case is People v. Kohn (251 N. Y. 375). There, defendant Kohn had knocked on the door of an apartment several times, pushed open a nearby window, and finally tried to open the door. Thereafter, Kohn came out of the tene *367 ment building and waved to defendant Wriede (comparable to defendant in this case) who was standing at the entrance to the adjoining building. Wriede waved in reply and came over to Kohn to engage in conversation. As the two walked away they were arrested. Kohn told the arresting officer that he was looking for “ a friend chauffeur ”, but Wriede said nothing.
In reversing as to defendant Wriede, this court held: “ As to the defendant John Wriede, we think that the proof gave rise to a bare suspicion that he was engaged with the defendant Sol Kohn in an attempt to commit the crime of burglary. Surely, the mere wave of a hand by a felon, who is leaving the scene of his crime, and a return wave by the person saluted, can have no force to establish that the two have been confederates in the offense committed. We are clear that the evidence was wholly lacking to establish the guilt of the defendant John Wriede ” (251 N. Y., supra, p. 378).
In the instant case, the inference of defendant’s guilty participation is no more compelling. Indeed, there is no proof here of any prior relationship between the “lookout” (defendant Cleague) and the burglar (Brown).
Neither the classic rule nor its application here stems from any distrust of circumstantial evidence or any vaunted favoring of direct evidence. The myth of innate superiority of direct testimonial evidence was exploded long ago (e.g., 1 Wigmore, Evidence [3d ed.], § 26). Indeed, circumstantial evidence is generally stronger, at least when it depends, as it often does, upon undisputed evidentiary facts about which human observers are less likely to err as a matter of accuracy or to distort as a matter of motivation, emotional shock, or external suggestion. On the other hand, direct evidence almost always, even in the instance of bystanders, is subject to one or more of these psychological infirmities. Hence, the occasional superior reliability of the evidentiary circumstances, even as in this case {ibid.). But circumstantial evidence is as nothing unless the inferences to be drawn from the circumstances are logically compelling. The danger, therefore, with the use of circumstantial evidence is that of logical gaps — that is, subjective inferential links based on probabilities of low grade or insufficient degree — which, if undetected, elevate coincidence and, therefore, suspicion into permissible inference.
*368 Ip. this case, the circumstances are indisputably established, but the inferences to be drawn from the coincidence of time, place, and behavior are sufficient only to create suspicion. Consequently, defendant’s gui]t has not beep established to a certainty, nor is the evidence as a whole inconsistent with defendant’s innocence, excluding to a mora] certainty every other reasonable hypothesis.
Accordingly, the judgment should be reversed and the indictment dismissed.

At one point Officer Chernetsky testified that he was “informed that they were caught once.” This hearsay statement is not relied upon by the People.