(November 20, 1975)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JUAN GARCIA, Appellant.—Judgment of conviction after jury trial, Supreme Court, New York County, rendered June 15, 1973, affirmed. This trial involved a pure issue of fact as to whether the identifiable containers in the defendant-appellant's apartment, attributable to him, were shown by a chain of connective evidence to have been the same which, according to the police chemist, were found to contain heroin. Due to errors in description, such as, for instance, referring to the same container by different appellations, an unsuccessful attempt was made at trial to confuse the jury in following the particular containers through the chain of connective testimony. This was compounded by the failure of the officers to agree completely upon descriptions of what was found. But the evidence provided a basis upon which the jury could well have found that all three containers came from defendant's apartment and, since one was shown to contain the drug, there was ample basis to convict defendant of its possession. The court's charge, in all fairness, directed attention to the discrepancies, and it was not error to advise the jury to "keep its eye on the ball." Other points raised are without merit. Concur—Markewich, J. P., Tilzer and Lane, JJ.; Murphy and Lupiano, JJ., who dissent in the following memorandum by Lupiano, J.: Lupiano, J. (dissenting). Defendant and his wife were charged with criminal possession of a dangerous drug in the fourth degree and obstructing governmental administration. Specifically, they were accused of possessing over an eighth of an ounce of heroin and attempting to prevent police officers from executing a search warrant. The jury acquitted defendant's wife and found defendant guilty of the possession count. On April 29, 1971, at approximately 1:30 P.M., a team of police officers proceeded to defendant's apartment armed with a search warrant. The validity of the warrant is not contested on this appeal. The officers were supervised by Lieutenant Jerome Shapiro. Other members of the team were Detectives Del Corso and De Marco and Patrolman John Bruno. Spotting defendant on the street outside his apartment, the officers showed him the warrant. After escorting defendant into the apartment, the officers handcuffed him and his wife. Inside a drawer in the bedroom, Detective Del Corso found two plastic bags containing white powder. He gave them to Officer Bruno who was in charge of collecting the seized items for the purpose of inventory. At trial, the People offered into evidence three bags of white powder allegedly seized from defendant's apartment as noted by Officer Bruno on the face of the manila envelope in which he had placed the seized items at the 24th Precinct. Testimony of the police chemist established that only one of these three bags was found to contain heroin. However, the search warrant return and memo books of the arresting officers reveal that only two bags of white powder had been seized from defendant's apartment. Both Detective Del Corso, who actually found the alleged contraband, and Lieutenant Shapiro,

who supervised the search, confirmed that only two bags of powder had been found. Officer Bruno, the only prosecution witness to claim that three bags had been seized, later admitted that he did not know where the third bag had come from. Officer Bruno vouched for the accuracy of his Grand Jury testimony, his search warrant return and his memo book entries, all of which confirmed that only two bags had been seized. Moreover, none of the three bags admitted into evidence bore any initials or other markings positively identifying them as being the bags seized from defendant's apartment. Defendant and his wife, contending that they were framed, assert that the bag containing heroin allegedly found on their premises, was planted by the police. Hence, the critical issue focuses on whether the People's proof was sufficient to prove that the single bag found to contain heroin had, in fact, been seized in the defendant's apartment. Since on this record there is no proof that contraband was found on either defendant or his wife, the People's proof rests on circumstantial evidence of constructive possession. "The well-settled rule in criminal cases with respect to those which depend exclusively upon circumstantial evidence is that 'the facts from which the inference of the defendant's guilt is drawn must be established with certainty—they must be inconsistent with his innocence and must exclude to a moral certainty every other reasonable hypothesis' (People v Bearden, 290 NY 478, 480)" (People v Cleague, 22 NY2d 363, 365–366). The People attempted to overcome the defect of proof with respect to the three bags of white powder by suggesting that the third package of white powder had been mistakenly described as a box in the officers' memo books and search warrant return. On this critical issue, the trial court upon defense counsel's exception to the original charge, further instructed that the issue of the discrepancy as to the number of bags of powder found in the defendant's apartment related to credibility only. This aspect of the charge, when coupled with the admonition to the jury in the original charge "to keep their eye on the ball" and "not to go off any tangents" such as whether or not the defendants had been beaten by the officers, lends color to defendant's assertion that the weakness in the People's case, as delineated above, was obscured. Accordingly, the judgment rendered on June 15, 1973, in New York County, convicting defendant Juan Garcia, after trial, should be reversed, on the law, and a new trial ordered.