THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
ROBERT TURNER, Appellant.

First Department, February 19, 1980

### APPEARANCES OF COUNSEL

*Brent K. Olsson* of counsel *(William E. Hellerstein,* attorney), for appellant.

*Jerrold L. Neugarten* of counsel *(Robert M. Morgenthau, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

FEIN, J.

We are all agreed that the evidence on which the defendant was convicted of robbery for his complicity in the holdup of a bar was entirely circumstantial. The evidence upon which the conviction was based is fairly described in the dissent, which concludes that it was insufficient for a conviction and that the indictment must be dismissed. We disagree. The evidence, albeit circumstantial, was sufficient, if believed by the jury, to support the conviction.

However, reversal and remand is required because of the failure of the Trial Judge to charge the jury as to the rules applicable to circumstantial evidence. Although there was no

request for such charge and no exception taken by reason of the failure to charge circumstantial evidence, reversal is required in the interest of justice and a fair trial.

It is well settled that a conviction based upon circumstantial evidence will be sustained if the conclusion of guilt is consistent with and flows naturally from the proven facts, and those facts viewed as a whole "exclude 'to a moral certainty' every reasonable hypothesis of innocence" *(People v Benzinger,* 36 NY2d 29, 32; *People v Cleague,* 22 NY2d 363, 365-366). Application of this principle requires careful examination and strict analysis of the evidence.

It is undoubtedly true that a criminal conviction based upon circumstantial evidence is subject to strict judicial scrutiny to insure that the jury does not draw inferences which are based not on the evidence presented but rather on unsupported assumptions drawn from evidence equivocal at best *(People v Kennedy,* 47 NY2d 196, 202; *People v Cleague, supra,* at p 367). The problem is to insure that the trier of the facts does not "leap logical gaps in the proof offered and draw unwarranted conclusions based on probabilities of low degree" *(People v Benzinger, supra,* at p 32). However in performing the task of close judicial scrutiny, it is essential that all of the evidence be considered in its totality *(People v Kennedy, supra).* The evidence must be viewed in the light most favorable to the People. Since the People have prevailed at trial, it must be assumed that the jury credited the People's witnesses *(People v Kennedy, supra,* at p 203; *People v Montanez,* 41 NY2d 53, 57). "In the end, it is a question whether common human experience would lead a reasonable man, putting his mind to it, to reject or accept the inferences asserted for the established facts." *(People v Wachowicz,* 22 NY2d 369, 372.)

The evidence here was sufficient for a jury to find that the defendant was an accomplice of his brother in the robbery of the bar. The testimony of the owner of the bar is undisputed that some 15 or 20 minutes before the robbery she observed defendants, one in a green parka, the other in an orange rainsuit, in front of a telephone booth across the street from the bar. Although taken alone this evidence may be equivocal, it does set the scene and places defendant nearby the robbery site shortly before it occurred.

The next piece of evidence is by the owner, as to the entry into the bar of defendant, whom the owner knew as a customer, clad in a green parka and carrying a drink. Told he

could not bring a drink with him, defendant stated he only wished to make a phone call. His attempt to make the call on the public phone was not completed, as evidenced by a return of the coin. Again the conduct is equivocal standing alone. But could a jury not properly infer that the phone call was a signal, in the light of the next piece of evidence? After the phone call, defendant started to leave the bar when his brother, the robber himself, wearing an orange rainsuit, came through the door. Defendant and the robber engaged in conversation at the door, which defendant closed in such a manner as not to lock it. Thus far the activity is perhaps equivocal. However, it begins to take character from what follows, the robbery itself, by defendant's brother, the man in the orange rainsuit. The evidence is undisputed that while the robbery was in progress, defendant was observed through the window of the bar, walking up and down and looking in both directions. The behavior is no longer equivocal. The evidence up to this point plainly supports to a moral certainty the inference that defendant and his brother were engaged in a joint enterprise, viz., robbery of the bar. The underlying inferences are that defendant's incomplete phone call was designed as a signal to the robber, and that the exchange at the door related to defendant's taking up an observation post outside the bar to act as a lookout. Would not "common human experience * * * lead a reasonable man, putting his mind to it, to * * * accept the inferences asserted for the established facts" (People v Wachowicz, 22 NY2d supra, at p 372)?

Although any one of such pieces of evidence might be equivocal, taken together they point in only one direction. The dissent fastens on the fact that the bartender who observed two men leaving outside the bar together after the robbery was equivocal as to whether the two were the defendant and the robber. Concededly such testimony did not aid in linking this defendant to the robber because of the inability to identify the two persons. However, it does not follow, as the dissent suggests, that because that evidence was equivocal the remaining evidence was insufficient.

Unlike Cleague (supra), on which the dissent relies, there was evidence here that the defendant and the robber knew each other and were acting together, as indicated by their contact in front of the telephone booth across the street, their conversation with each other as one emerged from and the

other entered the bar, and defendant's behavior outside the bar while the robbery proceeded. There was no evidence in *Cleague* that the defendant knew or had any contact with the burglar *(People v Cleague,* 22 NY2d, *supra* at p 367). The crucial significance of such knowledge and contact is evidenced by *People v Wachowicz (supra)* decided the same day as *Cleague.* The conviction was sustained where the sole evidence of defendant's guilt was the fact that he was walking and talking with the man who possessed the burglar's tools used in the attempted burglary. There was no logical gap.

The combination of circumstances here requires neither a leap of logical gaps nor the drawing of unwarranted conclusions. Two men are observed talking to each other across the street, one enters the bar and attempts a phone call, which can surely be regarded as a signal, the men talk to each other at the doorway to the bar, the door is left ajar, the robbery goes forward and the defendant is observed outside acting in the manner of a lookout. A jury could, as this jury did, infer that such conduct was consistent to a moral certainty with guilt. If this evidence is not sufficient to a moral certainty to support an inference of guilt, it is difficult to ascertain the quantity of evidence required in a lookout case. The careful reasoning required of the trier of the facts justifies the jury's conclusion, the inference of guilt. It is the function of the jury to sift through the evidence to determine whether defendant's guilt has been proven beyond a reasonable doubt. The task on review is to determine whether there exists sufficient inculpatory evidence to prove defendant's guilt beyond a reasonable doubt *(People v Kennedy,* 47 NY2d 196, *supra).* Tested by that standard, we believe the evidence here sufficed.

The Trial Judge gave a careful and thoughtful charge on the subject of reasonable doubt, which might be deemed sufficient without a circumstantial evidence charge. However, we have concluded that since the defendant's guilt was completely premised upon circumstantial evidence he was entitled to a circumstantial evidence charge, even though he did not request it and did not except to the court's failure to give it. We believe the interests of justice and defendant's right to a fair trial require that the cause be remanded for this reason (CPL 470.05, subd 2; 470.15, subd 6, par [a]; *People v Robinson,* 36 NY2d 224, 228; *People v De Martini,* 218 NY 561; *People v Vasquez,* 47 AD2d 934, 935).

Accordingly, the judgment, Supreme Court, New York

County (LEVITTAN, J.), rendered May 10, 1978, convicting the defendant of two counts of robbery in the first degree and sentencing him to concurrent indeterminate terms of 4½ to 9 years, should be reversed, on the law, in the exercise of discretion and in the interest of justice, and the case remanded for a new trial.

KUPFERMAN, J. (concurring in the result). As the opinion by Mr. Justice FEIN demonstrates, the evidence "plainly supports to a moral certainty the inference that defendant and his brother were engaged in a joint enterprise, viz., robbery of the bar."

While it may be contended that the circumstantial evidence charge might have been requested, it was not, nor was exception taken. (See *People v Figueroa,* 69 AD2d 1021.) The Trial Judge covered the subject of reasonable doubt with care. There should be no remand. However, in view of the fact that my colleagues divide equally between outright dismissal of the indictment and a new trial, I opt for a new trial.

SULLIVAN, J. (dissenting). Convicted of robbery for his complicity in the holdup of a bar, on proof which was entirely circumstantial, defendant Robert Turner challenges, *inter alia,* the sufficiency of the evidence.

In the rainy, early morning hours of October 9, 1977, Nathaniel Singleton, a patron, Magdelena Harris, the owner, and her sister, Mildred Lucas, the barmaid, were the sole occupants of "Location 40", a bar at 1624 Amsterdam Avenue, in the Borough of Manhattan. Shortly before 2:00 A.M., Harris, taking out some garbage, observed two persons at a telephone booth across the street. One of the individuals was dressed in a green parka and the other in an orange rainsuit. At about 2:15 A.M., defendant, a customer whom Harris recognized, entered the bar, wearing a green parka and carrying an open can of beer or soda inside a paper bag. Told that he could not bring a drink in with him, defendant remarked that he wanted to use the telephone. He then proceeded to the rear of the bar to the public telephone but, apparently, was unable to complete his call because, according to the three witnesses, the coin which he deposited was returned.

The outer front door to the premises locked automatically, and Lucas, from behind the bar, had to press the electric buzzer which activated the lock, to let defendant out. As he was leaving, his brother, the codefendant George Turner,

entered wearing an orange rainsuit. The two spoke to each other briefly. As defendant departed, the door remained slightly ajar.

Once inside, George went to the rear, pulled a gun, and announced "This is a stickup." He demanded that Lucas give him whatever money was in the cash register, and ordered a bottle of champagne. He threatened to shoot Singleton, who also handed over his money.

George then ordered Harris to open the door to the office, threatening that if she refused he would kill Lucas.[1] Harris testified that after entering the office George bumped into the edge of a tabletop which, unsecured and precariously balanced, toppled off its base, falling onto a box of fluorescent light bulbs on the floor. According to Harris, the box was knocked aside, thereby revealing approximately $1,800 in bills which had been hidden under the box. Overjoyed with his good fortune George took the money,[2] left the office without further ado, and, after Lucas pressed the buzzer to let him out, exited the bar, admonishing his victims, "Don't look at me." Immediately after George's departure, Harris observed two persons walking away from the bar. She conceded, however, that she did not recognize either person and that they could have been two strangers who just happened to be walking by the bar. She did testify, however, that during the robbery she had occasion to glance out the front window a half dozen times and saw defendant standing outside with his back to the bar looking up and down the street.

Charging that defendant could be convicted only if the jury found that he was acting in concert with George Turner, the trial court submitted three counts of robbery in the first degree, one count as to each victim, and three counts of the lesser included offense of robbery in the third degree. The jury acquitted both defendants of the office robbery of Harris but convicted them of robbery in the first degree as to Lucas and Singleton.

In our view, the evidence is insufficient to enable a jury to conclude beyond a reasonable doubt that defendant was an accomplice of George Turner, because it does not yield a

1. Singleton testified that after robbing him the man took the bottle of champagne and left the bar without ever going into the office with Harris.

2. Harris did not report the theft of the $1,800 to the police officers who initially investigated the crime. Nor did she immediately tell Lucas, her sister, who did not know of the theft when she first spoke to the police.

factual basis from which to infer that defendant knew George intended to commit a robbery when George entered the bar or even that defendant was aware that a robbery was in progress as he waited outside. While an hypothesis of guilt may doubtless be drawn from an analysis of defendant's conduct, we believe that his actions are equivocal, whether viewed separately or in their totality, and are readily consistent with an inference of noncriminal behavior. Consequently, we find that the People have failed to meet their burden of proof as a matter of law.

Section 20 of the Penal Law defines the standard of accessorial conduct by which an individual is criminally liable for the conduct of another: "When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpabilty required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct."

In support of their hypothesis that defendant aided and abetted George Turner in the robbery at the Location 40 bar, the People offer the following:

1. both defendants, as identified by their clothing, were seen standing together at a telephone booth across the street from the bar less than a half hour before the robbery;

2. defendant, drink already in hand, entered the bar;

3. when defendant called on the telephone his coin was returned;

4. as defendant left the bar, George came in through the open door, and they exchanged words;

5. the outer front door, which should have closed, remained open;

6. defendant remained just outside the bar, in the rain, looking from left to right; and

7. immediately after the robbery, two persons walked past the front window of the bar.

From these facts the People argue that the jury must have concluded that defendant's "telephone call" was a pretext to "case" the bar; that by standing in front of the premises, looking back and forth, he was acting as a lookout; that the only way the outer door could have remained unlocked was by defendant closing it in a way designed to avoid tripping the

latch; and, finally, that it was he and his brother who were seen walking away from the bar after the robbery.

The Court of Appeals has restated the long-standing rule of law applicable to criminal cases based entirely upon circumstantial evidence: "[F]or a conviction based exclusively upon circumstantial evidence to stand, the hypothesis of guilt should flow naturally from the facts proved, and be consistent with them, and * * * the facts proved must exclude to a moral certainty every reasonable hypothesis of innocence." *(People v Lagana,* 36 NY2d 71, 73-74.)

In *People v Cleague* (22 NY2d 363, 368), it was held that "the inferences to be drawn from the coincidence of time, place, and behavior are sufficient only to create suspicion." Like Cleague, who was observed standing in a used car lot while a second man was burglarizing a nearby office, defendant's actions here were not "indisputably that of an accomplice". *(People v Cleague, supra,* at p 365.)

On the night of the robbery defendant was seen with his brother twice. On the first occasion, a half hour before the robbery, Magdelena Harris observed the two talking across the street. On the second occasion they brushed past each other in the doorway to the bar. To conclude that defendant was plotting a holdup with his brother when talking with him on the street, or that his sortie into the bar was to assure that his brother would have easy ingress and egress, or that the aborted telephone call, which is concededly equivocal, was the signal, it seems to us, entails a leap of "logical gaps in the proof offered" and the drawing of "unwarranted conclusions based on probabilities of low degree". (See *People v Benzinger,* 36 NY2d 29, 32; see, also, *People v Cleague, supra,* p 367.) The conclusion that defendant closed the outer door in a way to avoid tripping the latch is sheer speculation. In any event, the significance of the door being left ajar is diminished, if not eliminated, by George's need to order Lucas to press the buzzer so that he could be let out.

Furthermore, although two men were seen walking past the front window after George Turner had completed the robbery and left the bar, neither was observed wearing a green parka or an orange rainsuit. In reaching the inferences necessary to establish guilt, care must be taken to assure that "the facts from which the controlling inferences were drawn must themselves have been proved, not presumed." *(People v May,* 290 NY 369, 371.) To infer that the two men seen walking away

were the Turner brothers making good their escape would violate this rule, since it involves the inference that defendant knew that George had committed a robbery from the unproven fact that the two men were indeed the Turners.

Possibly the most damaging piece of evidence was Harris' testimony that defendant was seen standing outside the bar during the course of the robbery. Since defendant could have been innocently waiting for his brother to exit the bar, only on proof indicating that he knew that a robbery was in progress or that he became a participant after his brother came out of the bar, would we be inclined to find that a web of complicity had been drawn around him with no thread missing. Without such proof, however, we cannot conclude that the circumstantial evidence excludes every hypothesis but guilt.

It is true, of course, that in assessing sufficiency in a circumstantial evidence case, the facts must be examined, not in isolation from one another, but in their entirety. *(People v Benzinger,* 36 NY2d 29, 34, *supra.)* If, however, upon analysis, the conclusion reached does not exclude to a moral certainty every reasonable hypothesis of innocence, the guilty verdict based on that conclusion must fall. We believe that to be the case here.

Accordingly, the judgment, Supreme Court, New York County (LEVITTAN, J.), rendered May 10, 1978, convicting defendant of two counts of robbery in the first degree, and sentencing him to concurrent indeterminate terms of 4½ to 9 years, should be reversed, on the law, and the indictment dismissed.

Ross, J., concurs with FEIN, J.; KUPFERMAN, J., concurs in result only; MURPHY, P. J., and SULLIVAN, J., dissent in an opinion by SULLIVAN, J.

Judgment, Supreme Court, New York County, rendered on May 10, 1978, reversed, on the law, in the exercise of discretion and in the interest of justice, and the case remanded for a new trial.