(August 29, 1991)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALBERTO CEDENO, Appellant.—Judgment of the Supreme Court, Bronx County (Ivan Warner, J.), rendered July 1, 1988, which convicted defendant of manslaughter in the first degree and sentenced him to a term of 8⅓ to 25 years, is affirmed.

At trial, Claudia Ray testified that defendant told her that he wanted to sell drugs from her sister's apartment. Ray objected but her sister, who referred to defendant as "Frank", consented. For a period defendant was "away", during which time renovations were made to her sister's apartment consisting of reinforcement of the door, a peephole in the door and a hole through the floor down to the basement.

Ray testified that on May 9, 1987, she saw one "Kirk" or "Curt" in her sister's apartment. Later that day, when she saw defendant, he told her that "Kirk" had said this was his territory for drug dealing. Five men then ran up and said something to defendant in Spanish, which caused him to run

to the corner of 168th Street and Webster Avenue. There, defendant spoke to "Kirk" and as Ray approached, yelled at someone who appeared to be behind "Kirk". She was unable to see this person, because the building was blocking her view. She saw defendant waving his hand at the man behind "Kirk" and then, she saw defendant pull out a gun and shoot the person behind "Kirk"—"the guy I couldn't see". Defendant turned, looked at Ray, pulled his shirt up and placed the gun down in his waistband. He ran inside Ray's sister's building, left the premises with another woman and got into a car and drove off.

Before this transpired, Rafael Peralta had driven to the scene of the shooting, 168th Street and Webster Avenue, with the decedent David Madera. He saw Madera with "Kirk", his business partner. At the corner, "Kirk" and Madera met two or three other people and spoke to them. Two of the men walked down Webster Avenue and returned with a third dark-skinned Hispanic male whose face Peralta could not see but who had his hair cut short on the sides and long on top (which fitted the appearance of the defendant). This person began to argue with Madera, then pulled out a gun and fired a shot. Peralta saw Madera "step back" as if he were "going to fall" before he ran. Peralta became frightened and drove off. When he returned to the scene, Madera was lying on the street and "Kirk" was trying to pick him up. An autopsy performed on Madera established the cause of death as a gunshot wound to the right chest.

The defendant contends that the Court denied him a fair trial by its refusal to give a circumstantial evidence charge. Such a charge was not warranted. The short recitation of the testimony given above refutes defendant's claim that there was no direct testimony that defendant shot Madera. *"Direct evidence* is that which tends to establish one or more of the principal facts in issue without the intervention of evidence of any other fact * * * *Circumstantial evidence* is evidence of a collateral fact, that is, of a fact other than of the fact in issue, from which, either alone or with other collateral facts, the fact in issue may properly be inferred" (Richardson Evidence §§ 3, 145, at 2, 116 [Prince 10th ed]). "While it is the oft-quoted rule in criminal cases which depend entirely upon circumstantial evidence that 'the facts from which the inference of the defendant's guilt is drawn must be established with certainty—they must be inconsistent with his innocence and must exclude to a moral certainty every other reasonable hypothesis' *(People v Cleague,* 22 NY2d 363, 365-366, quoting

*People v Bearden,* 290 NY 478, 480), this legal standard does not apply to a situation where, as here, both direct and circumstantial evidence are employed to demonstrate a defendant's culpability" *(People v Barnes,* 50 NY2d 375, 379-380, *see also, People v Gerard,* 50 NY2d 392, 397-398).

The evidence before the jury included the testimony of one witness that defendant, at a specific location, on a specific date, at a specific time, fired a gun at a business partner of "Kirk", and the testimony of another witness that after a man fitting defendant's description, at the same exact location, on the same date and at the same time, fired a gun, the victim stepped back as if he was "going to fall" and minutes later was left by the witness and "Kirk" on the ground. Further evidence was submitted that a bullet was recovered from the victim's body. Accordingly, the trial court did not err when it failed to charge the "moral certainty" language required where the evidence is wholly circumstantial. *(See, People v Devonish,* 159 AD2d 320, 321; *People v Pile,* 170 AD2d 197; *People v Schermerhorn,* 125 AD2d 729, 731.)

Further, defendant contends that evidence of uncharged drug selling by him was improperly admitted into evidence. However, this evidence was admissible since it was probative of defendant's motive and gave the jury " ' "an intelligent understanding of the whole of the evidence" ' " *(People v Turaine,* 162 AD2d 262, 263; *see also, People v Powell,* 157 AD2d 524). Concur—Murphy, P. J., Rosenberger and Asch, JJ.

Wallach, J., concurs in a memorandum as follows: I agree with the conclusion reached by the majority for the following additional reasons.

Here is a case where Witness A saw defendant fire a shot in the direction of a victim she could not see. Simultaneously, Witness B heard a shot, and saw a man recoil as if about to fall. A bullet was later recovered from the body of that man, decedent David Madera.

The majority argues that this chain of evidence is "circumstantial", so that it carries in its train the necessity of jury instructions from the trial court upon all the caveats for the cautious consideration of circumstantial evidence and the methodology for determining permissible inferences to be drawn therefrom. I do not agree that this evidence escapes the direct realm.

A useful illustration of the difference between direct and circumstantial evidence may be found in Fisch, New York Evidence (§ 161, at 91 [2d ed]): "For example, in order to

establish that the accused is the person who murdered X, a prosecution witness testifies that he saw the defendant stab the deceased. This is testimonial evidence; it involves only a testimonial inference. But when a witness, in the same case, testifies that the accused offered him money as an inducement to absent himself from the trial, the evidence, although based upon testimony and therefore involving a testimonial inference, is circumstantial, for in order to reach a conclusion of guilt it becomes necessary to draw another inference of a *different* kind, namely an inference from the attempt to bribe to a consciousness of guilt, which in turn is used as the basis for an inference of guilt." (Emphasis in original.)

The inference that the People seek to draw in this case is of a far lower order of attenuation (and is thus of "a *different* kind") from the typical item of circumstantial evidence. The jury was asked to (and did) link the two simultaneous direct observations to the same immediately fatal injury and ensuing death. While it is true that both halves of the testimonial apple must be accepted for this evidence, standing alone, to lead anywhere, this interdependence does not render either half (or the whole apple) circumstantial. No succession of an intermediate fact (viz., the bribe in Fisch's example) to an ultimate fact (viz., consciousness of guilt) is presented. Although this corpus of evidence is conveyed by two separate witnesses, this feature, in view of the simultaneity of the observations, does not transpose its nature from testimonial to inferential, and therefore from the direct to circumstantial category.

It follows that Criminal Term did not err in denying defendant's request for a circumstantial evidence charge.