[627 NYS2d 1014]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
VICTOR ROLDAN, Appellant.

First Department, June 15, 1995

APPEARANCES OF COUNSEL

*Lissa Griffin* of counsel, White Plains *(Phillip L. Weinstein,* New York City, and *John Jay Legal Services, Inc.,* White Plains, attorneys), for appellant.

*Lisa Ellen Mudd* of counsel, Bronx *(Billie Manning* on the brief; *Robert T. Johnson, District Attorney* of Bronx County, attorney), for respondent.

## OPINION OF THE COURT

WALLACH, J.

Circumstances, as lawyers and Judges are wont to say, alter cases. In that sense, all cases have circumstances. But that does not mean that they all thereby become circumstantial evidence cases, and this one, a knifepoint robbery in the subway system, is clearly not of that genre.

We are all in agreement that the evidence, viewed in the light most favorable to the People, was sufficient to support defendant's convictions for these robberies *(People v Malizia,* 62 NY2d 755, *cert denied* 469 US 932) upon the theory that he acted as an accomplice to Craig Biggers, the main actor who wielded the knife. This appellant was tried alone, Biggers' case having been severed following the latter's guilty plea to the top count of the indictment.

The dissent, however, would reverse and grant a new trial on the ground that the trial court erred in declining to give a circumstantial evidence charge. We disagree. Under New York law, "a special instruction on that subject is required only when the prosecution's case rests on circumstantial evidence alone" *(People v Ruiz,* 52 NY2d 929, 930; *see also, People v Gerard,* 50 NY2d 392; *People v Barnes,* 50 NY2d 375).

Although the import of the trial testimony is fairly summarized by the dissent, we would focus on the fact that during the period starting with the two female victims' first observa-

tion of defendant in conversation with Biggers on the north-bound 125th Street subway platform at 10:00 P.M., until the arrest of the two men in joint flight with the loot of the robbery from the elevated station at Zerega Avenue about an hour later, every incriminating action of defendant was described by these two eyewitness victims, supported at the very end by two additional eyewitnesses, namely, the transit detectives who effected the arrest. These officers witnessed the flight of the pair together, even before they knew of the crime, and then with knowledge of the victims' story, gave chase accompanied by the two women in a police car.

Thus, the great bulk (if not the entirety) of the People's case here rested on direct eyewitness evidence. Naturally, in an unfolding scenario of this type, some of the actions of defendant (e.g., staring at one of the victims while conversing inaudibly with Biggers in the subway car; leaving the car occupied by the victims and Biggers during the course of the ride) might be viewed as equivocal or consistent with innocence. But to say that conflicting inferences arise from a series of actions over a one-hour time frame, where some of those actions may well be equivocal, does not cast the case into the wholly circumstantial evidence category requiring the jury to apply the consequent two-step analysis and a "moral certainty" standard. Here the evidence develops entirely along the same linear plane, and the jury was free to discard as irrelevant any aspect of defendant's alleged conduct—incriminatory or exculpatory—that it chose.

We are called upon here to define, as we understand it, the difference between direct and circumstantial evidence. A useful paradigm of circumstantial evidence is the hypothetical prosecution for burglary and larceny set forth in the Criminal Jury Instructions (1 CJI[NY] 9.05). After an example is provided of an eyewitness describing a defendant's flight from a dwelling with a stolen television set (direct evidence), the following is given (id., at 472-473) as an appropriate illustration for the jury of the nature of circumstantial evidence: "However, suppose there is no such direct evidence by an eyewitness. Suppose, instead, that the only evidence at the trial is: (1) Footprints in the snow outside the house which match the defendant's shoes, (2) the presence of defendant's fingerprints on the broken windowpane, and (3) proof that a TV set was missing from the house. These are 'circumstantial facts' which, even if believed by the jury, do not directly establish the defendant's guilt. The jury would be required to

take the second step and determine whether the proved 'circumstantial facts' reasonably and logically compel the conclusion that it was the defendant who committed the burglary and larceny, despite the absence of direct evidence from a witness who actually saw him do so."

As will be readily appreciated, the force of each one of the three exemplary items would depend entirely upon surrounding *circumstances entirely separate* from the items themselves. As to footprints in the snow, if they are a standard size of a widely marketed heel and sole, they may be of little value; the opposite follows if one of them is a club foot uniquely characteristic of the defendant. His fingerprint on the window pane may be decisive, or worthless if further proof shows that he was regularly employed by the occupants of the house to clean the windows. The fact that the television set is missing, although important to the prosecution for other reasons, does virtually nothing, standing alone, to link defendant to its absence. The common theme for our purpose is simply that a two-dimensional phenomenon is presented: the jury, to convict, must credit the witness who reports the discovery of the item itself, and then place the item in its global setting and accept the inference the prosecution seeks to draw from it *(see,* Fisch, New York Evidence § 161 [2d ed]; *People v Seifert,* 152 AD2d 433, *lv denied* 75 NY2d 924).

This type of circumstantial evidence (consisting of what even a nonreader of detective fiction would recognize as "clues") must analytically be distinguished from the conclusions a lay eyewitness draws from his observations, and the conclusions a juror is permitted to draw from the eyewitness' continuous narrative. Contrary to defendant's argument, this type of lay opinion is properly received in evidence. Familiar examples, given in Richardson, Evidence § 364 (Prince 10th ed) are whether a person is angry or jesting, vigorous or feeble, sober or intoxicated, the estimated age of another, the genuineness of handwriting, the identity of a briefly seen perpetrator or his telephone voice, etc. In many of these instances, a foundation (or two-step) process is required: the witness must first testify to certain facts (e.g., previous familiarity with the defendant's genuine writing), but that foundation requirement does not render the testimony circumstantial. A good example is the New York rule permitting a witness, where sanity is the issue, to describe the actions of another, and then to give his opinion as to whether those actions were rational *(People v Pekarz,* 185 NY 470, 481).

Thus, in the case at bar, it was entirely proper for one of the victims to testify that defendant and Biggers were "signalling" to each other during the subway ride, but that conclusion, although derived from directly observed circumstances, was not circumstantial evidence.

True, the ultimate question before this jury (whose verdict amounted to an affirmative answer) was whether defendant, "acting with the *mental culpability* required for the commission [of robbery] * * * *intentionally* aid[ed]" Biggers as an accomplice (Penal Law § 20.00; emphasis added). All of the evidence pertaining to his conduct, including his lookout-like behavior on the otherwise deserted elevated station platform late at night for an approximate 10-minute interval, is circumstantially related to his state of mind. However, where, as here, a particular state of mind is an essential element of a crime, necessarily provable only by the circumstances surrounding the commission of the offense, this commonly encountered *mens rea* issue does not trigger the necessity for a circumstantial evidence charge *(People v Licitra,* 47 NY2d 554; *People v Gerard, supra; see, People v Barnes,* 50 NY2d, *supra,* at 380).

This record does not present a case where defendant's presence alone is established by direct evidence, with all else resting upon ambiguous (as opposed to conflicting) circumstances. The dissent's reliance upon *People v Cleague* (22 NY2d 363) and *People v Turner* (73 AD2d 56) is misplaced. *Cleague* was a bench trial conviction resulting in an ultimate disposition by the Court of Appeals that the evidence to convict was insufficient as a matter of law. No charge issue whatever was involved. Justice Fein's opinion in *Turner,* while presenting a factual pattern and legal issue similar to that presently before us, has little precedential value on the necessity of a circumstantial evidence charge since it failed to command a majority of the panel. Only two Judges voted for reversal on the charge issue, while two others (including the dissenter here) voted to dismiss the case entirely for insufficiency of evidence as a matter of law. The majority was created by a separately concurring fifth Judge who rested on his expressed independent preference to affirm the conviction, but "opt[ed]" *(supra,* at 60 [Kupferman, J., concurring]) for a new trial as the lesser of two perceived evils even though he was unable to endorse the necessity for a circumstantial evidence charge. Thus, we are hardly bound by *Turner,* and are free to reject it as an aberration.

To conclude, this is a four-eyewitness case. The question for the jury was whether defendant's actions made him an accomplice (lookout) in aid of the self-confessed actual robber. The fact that defendant's culpable mental state in aiding the main perpetrator is shown circumstantially does not require, under prevailing law, a full-blown circumstantial evidence charge. Defendant was convicted under the applicable reasonable doubt standard, and he cannot properly demand more.

Accordingly, the judgment of Supreme Court, Bronx County (Ivan Warner, J.), rendered June 29, 1993, convicting defendant, after a jury trial, of two counts of robbery in the first degree, and sentencing him, as a second violent felony offender, to concurrent terms of 6 to 12 years' imprisonment, should be affirmed.

MURPHY, P. J. (dissenting). The defendant and his codefendant, Craig Biggers, as well as the two complainants, Allison Aponte and Elizabeth Arroyo, boarded a number 6 subway train at 125th Street. Once on the train, the defendant and Biggers sat down near, although not immediately beside, each other and according to Arroyo engaged in a conversation the substance of which was not audible. Thereafter, Biggers began verbally to harass the complainants. The defendant did not join in and in fact eventually moved by himself to a different subway car. When the train arrived at Zerega Avenue, the complainants got off followed by Biggers. It was shortly after leaving the train that the complainants were accosted on the subway platform by Biggers and robbed of various possessions at knifepoint. Aponte testified that while Biggers relieved her and Arroyo of their possessions, the defendant, who had apparently also exited the train at Zerega Avenue, stood some 65 to 75 feet away; he was situated at the top of the stairwell providing access to and from the platform. While Aponte at first claimed to have observed defendant glancing alternately down the stairs and in the direction of the ongoing robbery, she later stated that defendant was simply standing at the top of the stairs—that she could not see his face and that she did not witness any communication between defendant and Biggers while the robbery was in progress. Once the robbery was complete, Biggers joined the defendant and the two fled the station together. A short time later, when they were apprehended in the vicinity of the station, Biggers was still in possession of the items taken from the complainants; defendant, on the other hand, had no stolen property and dis-

claimed any relationship with Biggers, stating "I don't know the guy, I was just asking him for directions".

Defendant was convicted of robbery in the first degree on the theory that he had acted as Biggers' accomplice. He now seeks to have the judgment of conviction reversed and the indictment dismissed upon the ground that the evidence was insufficient to establish his complicity in the robbery or, alternatively, to obtain a new trial upon the ground that his request for a circumstantial evidence charge was erroneously denied.

While I agree with the majority that the evidence, viewed in the light most favorable to the People, was sufficient to support the verdict, I cannot agree that the trial court's refusal to deliver a circumstantial evidence charge was correct and, as the error cannot in the present context be viewed as harmless, would reverse the conviction and remand the matter for a new trial.

It is well established that where the evidence of guilt is wholly circumstantial a circumstantial evidence charge, if requested, must be given explaining to the jury that, in the absence of direct evidence of the defendant's guilt, a verdict against the defendant may only be reached inferentially and that the inference of guilt, if drawn, must be compelling, indeed, that it cannot be drawn unless all reasonable hypotheses consistent with the defendant's innocence have been excluded (*People v Silva,* 69 NY2d 858, 859; *People v Ford,* 66 NY2d 428, 441-442; *People v Kennedy,* 47 NY2d 196, 201-202, 204; *People v Cleague,* 22 NY2d 363, 367; *People v Benzinger,* 36 NY2d 29, 32). This much is not and cannot be disputed; the issue is rather whether this was a case in which the evidence was in fact wholly circumstantial thus triggering the court's obligation to accede to the defendant's request for a circumstantial evidence charge.

In arguing that the evidence against the defendant was not wholly circumstantial, the People point to the testimony indicating that defendant and Biggers conversed shortly before the robbery and to the evidence of defendant's presence on the subway platform while the robbery was in progress. Manifestly, however, neither evidentiary component established more than a circumstance which in combination with the other circumstantial evidence might have lent support to an inference that the defendant had in fact intentionally aided Biggers in the commission of the robbery. Neither piece

of evidence, nor for that matter any of the other evidence in the case, directly established the defendant's commission of any element of the crime charged. Obviously, the defendant's inaudible conversation with Biggers prior to the crime cannot be adduced as direct evidence of defendant's participation in the robbery. And, while the defendant's presence at the top of the stairway during the robbery might well, in combination with all the other circumstances to which the complainants testified, have supported the inference that defendant was acting as a lookout for Biggers, there was no evidence establishing directly that the defendant acted in that culpable capacity; he did not call out to Biggers or in any other way unambiguously signify a connection between his presence and the crime transpiring some 70 feet away. Indeed, the cases uniformly treat evidence unambiguously establishing no more than presence as circumstantial (see, e.g., People v Cleague, 22 NY2d 363, supra; People v Turner, 73 AD2d 56).

The majority, while conceding that the evidence bearing upon the defendant's intent was wholly circumstantial, is apparently of the view that there was other evidence in the case, presumably bearing on the defendant's conduct, possible to characterize as direct. The majority, however, notably fails to specify the evidence to which it alludes preferring instead to describe the evidence in toto as developing "entirely along the same linear plane". Whatever this picturesque phrase may signify, it hardly suffices to demonstrate the noncircumstantiality of any part of the proof against the defendant.

Contrary to the majority's suggestion, the fact that the People's case rested on eyewitness accounts of the robbery does not render the proof against the defendant in any measure noncircumstantial. The issue before us is not whether the relevant events were directly perceived, but rather what the witnesses' perceptions, direct as they may have been, may be said to have established about the crime charged, and, more particularly, what they may be said to have established about the crime charged without the aid of intervening inference. When all is said and done, the evidence, eyewitness though it may have been, established directly no more than that the defendant was present on the subway platform during the robbery; the connection between the defendant's presence and the robbery, while inferrable, was not patent to the witnesses and, as a consequence, was not directly proved by their testimony.

Although the majority by means of transparently irrelevant

distinctions affects not to comprehend the pertinence of *Cleague (supra)* and *Turner (supra)* to the matter at bar, their bearing—indeed decisive bearing—is unmistakable. In both of those cases, as here, the defendants were observed by eyewitnesses at or near the crime scene acting in a manner possibly but not necessarily interpretable as that of a lookout. The Court in *Cleague,* in determining to dismiss the indictment, and the Court in *Turner,* in determining to remand the matter for a new trial, were, contrary to the impression which might be gleaned from the majority writing, unanimous and explicit that the evidentiary predicates before them were composed of wholly circumstantial evidence. Unless there is some material difference between the quality of the "lookout" evidence in *Cleague* and *Turner* and that presented here—and certainly none is identified by the majority or otherwise evident from the cases—it must follow that this case is every bit as circumstantial as *Cleague* and *Turner,* or, in other words, that this case, like *Cleague* and *Turner,* is wholly circumstantial.

This, of course, is not to say that the evidence against the defendant, circumstantial though it was, was not strong, for as has often been observed, circumstantial evidence may be every bit as inculpatory as direct evidence *(see, e.g., People v Benzinger, supra,* at 32; *People v Ford, supra,* at 442), and the evidence in this case was at least sufficiently inculpatory to support the verdict. The defendant's right to a circumstantial evidence charge, however, did not hinge on the ultimate strength of the evidence but upon its complete lack of unmediated probative significance *(People v Silva, supra,* at 859). Unless there is some sound analytic and/or precedential basis for the conclusion that any portion of the evidence was directly probative of the defendant's participation in the robbery, and certainly none has been identified, the defendant was entitled, as per his request, to have the jury instructed as to the circumstantiality of the evidence and as to the high degree of certitude necessary to support any inference of guilt.

Finally, although the case against the defendant was strong, it was by no means overwhelming. While the evidence showed that defendant had associated with Biggers before and after the crime and that during the robbery he stood at a place which although distant from the spot where the robbery occurred was one from which he might have acted as a lookout or blocked the complainants' egress, it also showed that he removed himself from Biggers' company during Biggers' verbal harassment of the complainants and remained

apart from Biggers until the robbery was completed. The entirely plausible hypothesis that defendant was merely an associate of Biggers who awaited but did not assist Biggers during the commission of the crime might have militated against a finding of guilt if the jury had been properly instructed that an inference of guilt was not permissible while there remained reasonable alternative hypotheses consistent with defendant's innocence. Given the state of the evidence, it was for the jury to consider and either accept or reject the reasonableness of any such alternative hypotheses supported by the evidence and, in the end, to determine whether the inference of guilt was sufficiently compelling. However, as the jury was not properly instructed it is not clear that this essential deliberative responsibility was discharged nor, as a consequence, can it be said whether, if it had been, the defendant would still have been convicted. This then is not one of those exceptional cases in which the failure to deliver a required circumstantial evidence charge may be deemed harmless *(see, People v Brian,* 84 NY2d 887, 889).

Accordingly, the judgment of the Supreme Court, Bronx County (Ivan Warner, J.), rendered June 29, 1993, convicting defendant, after a jury trial, of two counts of robbery in the first degree, and sentencing him, as a second violent felony offender, to concurrent terms of 6 to 12 years, should be reversed and the matter remanded for a new trial.

Asch, Nardelli and Mazzarelli, JJ., concur with Wallach, J.; Murphy, P. J., dissents in a separate opinion.

Judgment, Supreme Court, Bronx County, rendered June 29, 1993, affirmed.