*713 OPINION OF THE COURT
Analisa Torres, J.
On August 24, 2010, after a jury trial, defendants, Aaron Reid and Husayn Thomas, were convicted of grand larceny in the fourth degree (Penal Law § 155.30 [5]) and criminal possession of stolen property in the fifth degree (Penal Law § 165.40).
Defendant, Aaron Reid, moves, pursuant to CPL 440.10, to vacate the conviction, on the ground that he was deprived of his constitutional right to effective assistance of counsel.
Background
On December 7, 2009, the grand jury indicted defendant, Husayn Thomas and Kevin Jones, upon the theory that defendant and Thomas served as accomplices to Jones, the principal actor in a subway pickpocketing. The prosecution alleges that as Jones removed an iPhone from the knapsack of an undercover police officer, defendant and Thomas used their bodies to conceal Jones’s actions.
On March 25, 2010, Supreme Court Justice Michael Obus dismissed the indictment against Jones, for the People’s failure to afford him the opportunity to testify before the grand jury.
A month later, the prosecution re-presented the charges against Jones to the grand jury. The People called two witnesses: New York City Police Department Officers Ivan Rodriguez and Michael Dennis. Both had been assigned to subway anti-crime duty on December 2, 2009. Rodriguez testified that he witnessed the theft. Dennis described his role as the decoy — the officer who wore the backpack that contained the iPhone.
Jones also testified, denying the charges and offering a different version of the events. (The substance of his testimony was disclosed to the defense.) According to Jones, on December 2, 2009, he was in Far Rockaway, Queens, visiting his mother. That morning, he boarded a westbound “A” train and ran into his friend Husayn Thomas. Jones and Thomas got off at the Broadway/N assau stop and were transferring to the Lexington Avenue line when, by happenstance, they bumped into defendant. After Jones, Thomas and defendant got on a northbound express train, Jones noticed a bag near a chair located in the corner of the subway car. He examined the bag and touched the iPhone to see if it worked. Jones then set down both items on the chair. He told the grand jury that defendant and Thomas “didn’t do anything. They didn’t go in the bag.”
*714 Apparently, the grand jurors believed Jones. His indictment was not resurrected. This had no impact on defendant and Thomas, because in a prosecution based on accessorial liability it is not a defense that a co-actor “has not been prosecuted for or convicted of any offense based upon the conduct in question.” (Penal Law § 20.05 [2].)
Before the trial commenced, defendant’s attorney made repeated phone calls to Jones, imploring him to testify on defendant’s behalf. Jones refused. He had moved to California and could not be located.
The Trial
The People allege that on the morning of December 2, 2009, Officers Rodriguez and Dennis, both wearing plain clothes, were participating in a five-man decoy operation on the Lexington Avenue subway line. At about 10:00 a.m., they were standing in Grand Central Station, on the northbound platform of the 4/5/6 trains. Dennis, the decoy, was dressed as a tourist — sporting patent leather shoes, a green blazer and an “I Love New York” cap. The knapsack on his back contained an iPhone in an exterior mesh pouch. Officer Rafael Morales, Lieutenant Kevin Callahan and Sergeant A1 Ricci were the other members of the team.
Officer Rodriguez’s Testimony
Rodriguez testified that as an express train was pulling in, he observed, at a distance of 10 feet away, three men in conversation on the platform: Jones, Thomas and defendant. A few passengers exited the train. The trio boarded the second subway car and stood near a door. Dennis followed. Rodriguez and Morales entered the same car and sat directly behind Jones, Thomas and defendant. The other officers were located in the rear portion of the first car.
Jones positioned himself behind Dennis. Thomas stood on Dennis’ right side and defendant flanked Dennis on the left. As the train took off, Thomas, while looking in the direction of Lieutenant Callahan and Sergeant Ricci, said to Jones and defendant, “those guys are cops.” Jones stated, “fuck it I’m going to take it.” Thomas replied, “go ahead we got you, we will cover for you.” Then, Thomas and defendant shifted their bodies. Jones moved close to the decoy officer, bumped him, removed the iPhone from the backpack and placed it on his person. Jones, Thomas and defendant sat down. They were arrested at the next station, the 59th Street stop.
*715 Officer Dennis’ Testimony
Dennis testified that on December 2, 2009, the decoy team was “working the Lexington Avenue subway line . . . patrolling back and forth.” Dennis did not state where he had boarded the train. Nor did he did mention observing Jones, Thomas and defendant chatting on the 42nd Street platform. Dennis testified: “when I entered the train I noticed both defendants ... in front of me.” A “third person” was with them. Dennis testified that he was facing the third individual and observed him with his “o[w]n two eyes.” The third person repositioned himself behind Dennis. As the subway car moved between stations, Dennis heard speech in back of him but was not sure who was talking or what was said. Dennis felt a bump. Rodriguez then pulled on his collar, signaling to Dennis that the iPod had just been stolen. Dennis exited the train at 59th Street and saw “the two defendants being placed on the wall.”
Dennis made no in-court identification of defendant as one of the three assailants. Nor did Dennis state that defendant was one of the two men placed on the wall. Aside from gender, Dennis offered no description of the perpetrators.
Defense counsel did not cross-examine Dennis.
The CPL 440.10 Hearing
I held a hearing on December 7, 2010. The motion was marked submitted on February 4, 2011.
Defendant testified on his own behalf. The People called defendant’s trial lawyer. I find both men credible, except in one respect. I adopt defense counsel’s claim that he advised defendant that it was his “call” as to whether he would testify. I reject defendant’s allegation that his attorney never informed defendant that he was the ultimate decision maker.
Following are my findings of fact and conclusions of law.
Defendant is an independent day care provider, pursuant to a program run by the New York City Administration for Children’s Services (ACS). The agency pays him to care for minors eligible for ACS-subsidized child care services.
On the morning of December 2, 2009, defendant visited the ACS office at 151 William Street in Manhattan. He had planned to travel from there to a program on 125th Street. After concluding business at ACS, defendant walked to the nearby Broadway/ Nassau subway stop. In the station, he ran into Jones and Thomas, whom he had not seen in 16 years. According to de *716 fendant, the three boarded a northbound Lexington Avenue line express train and did not exit at the 42nd Street stop. They had been on the train for about 10 minutes when it pulled into Grand Central Station.
Defense counsel admitted that before the commencement of the trial, defendant had informed him that on the morning of December 2, 2009, defendant went to an ACS office downtown. The trial attorney could not, however, remember seeing an ACS document memorializing the visit. A payment voucher, which defendant had shown his attorney before trial, was presented to this court for the first time as an attachment to defendant’s motion papers. Printed on the document is defendant’s name, ACS “provider number” and address. It covers the November 2009 pay period. The stamped form identifies by name three children in defendant’s care. On the bottom are three handwritten initials “LME” and the date “12/2/09.”
Defendant’s lawyer testified that he did not investigate defendant’s claim that he was not present on the 42nd Street platform — the location where Rodriguez said he spotted defendant in conversation with his two accomplices, Jones and Thomas, seconds before they committed the crime. Counsel made no effort to contact ACS officials to investigate whether they could corroborate defendant’s visit. The attorney did not attempt to obtain a printout of defendant’s MetroCard transaction record which would indicate defendant’s point of entry into the subway system and the time that the card was swiped. The lawyer did not inquire about the existence of subway station surveillance tapes that may have captured defendant at the Broadway/Nassau stop. Nor did defense counsel reach out to the program on 125th Street to determine whether defendant was expected that morning.
Law
In determining whether to hold a person criminally liable for the acts of another, the “ultimate question” for the jury is whether the defendant, acting with the state of mind required for the commission of the crime, intentionally aided another person as an accomplice. (People v Roldan, 211 AD2d 366, 370 [1st Dept 1995].) Proof of an accomplice’s mental state may be inferred from his actions and the circumstances surrounding the commission of the offense. (Id.)
In the context of subway crime, conduct held to be probative of an accomplice’s culpable state of mind has included: associat *717 ing with a group of other juveniles minutes before boarding a subway car, surrounding and threatening the victim and then dispersing together at the sight of a police officer (Matter of Taalib B., 273 AD2d 27 [1st Dept 2000]); conversing with the main actor and “lookout behavior” on a deserted subway platform before the principal culprit robbed the victims as the accomplice stood in a stairwell (Roldan at 370-371) and holding the subway door open while checking the platform, consulting with the main actor right before he threatened the victim and exchanging “ ‘high fives’ ” as they fled the scene (People v Glover, 165 AD2d 761, 762 [1st Dept 1990]).
The Federal and State Constitutions ensure those accused of a crime the right to assistance of counsel. (US Const 6th Amend; NY Const, art I, § 6.) Unlike the federal standard which requires a showing that there is a “reasonable probability” that the attorney’s errors affected the outcome of the case (Strickland v Washington, 466 US 668 [1984]), the core of the inquiry in New York is whether defendant received “meaningful representation.” (People v Turner, 5 NY3d 476 [2005].) More specifically, the question is whether counsel’s mistakes were so prejudicial that they deprived defendant of a fair trial. (People v Benevento, 91 NY2d 708 [1998].) A defendant claiming ineffective assistance must “ ‘demonstrate the absence of strategic or other legitimate explanations’ for counsel’s allegedly deficient conduct.” (People v Caban, 5 NY3d 143, 152 [2005] [citation omitted].)
A defendant’s right to representation entitles him to an attorney who conducts “appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself time for reflection and preparation for trial.” (People v Bussey, 6 AD3d 621, 623 [2d Dept 2004] [citation omitted].) A complete abdication of the duty to investigate, for no strategic reason, renders counsel ineffective. (People v Fogle, 10 AD3d 618 [2d Dept 2004].) The failure to seek an adjournment of the proceedings to arrange to interview witnesses proposed by a defendant in order “to determine the relevance, materiality and potential impact of the[ ] testimony” effectively denies “ ‘meaningful representation’ as guaranteed under the New York Constitution.” (Matter of John JJ., 298 AD2d 634, 636 [3d Dept 2002] [citation omitted].)
Discussion
Defendant argues that he was denied effective assistance of counsel because his attorney failed to investigate evidence that *718 would have undermined the People’s case and created reasonable doubt as to his complicity in the theft. Defendant alleges the existence of potential witnesses (ACS personnel who could corroborate his presence at their office), documentary evidence (the ACS payment voucher and MetroCard printout) and physical evidence (subway surveillance footage) that would tend to support his claim that he boarded the Lexington Avenue express train at the Broadway/Nassau stop — not at the 42nd Street station, where Officer Rodriguez testified that he saw defendant on the platform seconds before he got on the train with Jones and Thomas.
Because Rodriguez is the only eyewitness, the jury relied on his observations to establish defendant’s ties to Jones and Thomas and to draw the inference that the three were acting in concert. It behooved defense counsel, therefore, to consider bringing forth evidence that would cast doubt on Rodriguez’s testimony. This is where defendant’s lawyer failed.
Counsel had a duty to search for evidence potentially favorable to the defense which could have been utilized at trial. At a minimum, he should have visited or sent an investigator to visit the ACS office, obtained a printout of defendant’s MetroCard and inquired about subway surveillance tapes. An adequate investigation would have provided defendant’s attorney with enough information to make an informed, deliberate decision about whether such evidence existed and whether to introduce it.
On the eve of trial, defense counsel learned that Jones, his only witness, refused to testify and could not be located. Jones was, therefore, unavailable as a matter of law. At that critical juncture, the attorney had everything to gain and nothing to lose from undertaking an investigation that would likely have revealed a creditable source of reasonable doubt. By failing to seek an adjournment for that purpose, counsel left unpursued the only remaining defense.
Defendant’s attorney offered no sound reason for his derogation of duty. His failure to investigate was not part of a legitimate strategy, it was the result of neglect. Because defendant was denied meaningful representation, he is entitled to a new trial.
I have considered defendant’s remaining arguments and find them to be without merit.
*719 Conclusion
Defendant’s motion is granted, the judgment of conviction is vacated and the matter is adjourned to Part 51 for a new trial on April 14, 2011.